# FERDINAND H. SCHOLLE *vs.* STATE OF MARYLAND.

*Physicians and Surgeons—Examination and License to Practice Medicine—Exemptions—Constitutional Law—Classification of Persons—Office and Officer.*

Code, Supplement, Art. 43, secs. 39–63 provide that persons practicing medicine in this State shall obtain a license from the Board of Medical Examiners, but an exemption from this requirement is made in favor of commissioned surgeons of the U. S. Army, Navy or Marine Hospital Service, and physicians or surgeons in actual consultation from other States and persons temporarily practicing under the supervision of an actual medical preceptor. *Held*, that the classification of persons who are required to obtain licenses is just and reasonable, and is not in violation of the equality of rights secured by the Fourteenth Amendment of the Federal Constitution.

The Legislature has the power to require practitioners of medicine to obtain licenses from a Board of Examiners appointed by a private corporation

The provisions of the Constitution, Art. 2, sec. 10, authorizing the Governor to nominate, and by and with the advice and consent of the Senate, appoint all civil officers unless a different mode of appointment is prescribed by the law creating the office, does not operate to prevent the Legislature from providing that appointment to an office created by statute shall be made by a private corporation.

Appeal from the Criminal Court of Baltimore (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE SCHMUCKER and JONES, JJ.

*Charles F. Harley*, for the appellant.

1. The statutes are in contravention of the Fourteenth Amendment of the Federal Constitution. Of course, if the statutes required *every practitioner* in the State to procure a license and registration, they would be free from objection on the ground of inequality. *Dent* v. *West Va.*, 129 U. S. 114. But the law makes certain specific exceptions from its operations. Art. 43, section 49. These exceptions are substantially the same as those provided in chapter 132, New Hampshire General Laws ; and the Court declared that law unconstitutional as discriminating between persons engaged in the same business or profession. " This is not the equality of the Constitution. The magnitude of the unequal burden is not material. If any were permissible, the discrimination might be made prohibitory, and a monopoly of the business given to the physicians who have resided in a town or a city for a specified time." *State of New Hampshire* v. *Pennoyer*, 5 L. R. A. 709. See also *Dent* v. *West Va.*, *supra*, in which the Court lays great stress upon the necessity of extending the prerequisite to the right to practice to *every* practitioner in the State.

The law is also obnoxious to the constitutional provisions of the Fourteenth Amendment, in that it is not enforceable in the usual modes established in the administration of government with respect to kindred matters ; and in that it leaves room for the play and action of purely arbitrary power. *Dent* v. *West Va.*, 129 U. S. 114 ; *Yick Wo* v. *Hopkins*, 118 U. S. 356.

The Legislature has endeavored in this law to delegate to a private corporation, the Medical and Chirurgical Faculty of the State of Maryland, the absolute regulations of the practice of medicine in this State. It is useless for

the purposes of this argument to discuss the other private organization mentioned in the Act; to-wit, the Maryland State Homeopathic Medical Society, as our reasoning will apply equally to both bodies. To this corporation, which is not responsible as a part of the governmental machinery, is entrusted the sole and absolute power to select the State Board of Medical Examiners. *Art. 43, section 40, Code P. G. L.;* and this board is responsible to the private body corporate aforesaid, and not to the State. *Art. 43, section 52.* The power thus conferred is absolute and arbitrary, and therefore contrary to the Fourteenth Amendment. This objection will be further urged as a delegation of public power or trust, not authorized or warranted by our own State Constitution; and this point we will now proceed to discuss.

2. Section 10, Article 2, Constitution of Maryland, provides: " He (the Governor) shall nominate, and by and with the advice and consent of the Senate, appoint all civil and military officers of the State, whose appointment, or election, is not otherwise herein provided for; unless a different mode of appointment be prescribed by the law creating the office." But, of course, if a different method of appointment be prescribed, it must be a lawful method. It cannot, for instance, be contended that it is within the legitimate range of legislative power to delegate to a private person, without making him an officer of the State, the absolute and exclusive power to appoint an Examining Board, with the vast powers given by this law and with the duty of reporting, not to the State, but to the individual in question. This would be an unauthorized delegation of power " affecting the common right of the people of the whole State." *Bradshaw* v. *Lankford,* 73 Md. 428. If such power cannot be delegated to a comparatively small number of the inhabitants of the State, it cannot be delegated to one individual. Yet, this is substantially what the Legislature has endeavored to do with reference to a most vital power of paramount importance to every individual in

the State. It has divested, or attempted to divest, the State and its officers of responsibility in the premises, and placed the whole matter in the hands of one artificial person to which the board, selected by itself, reports. *Art. 43, section 52.* Statutes can delegate such powers only to *public* officers or bodies. The Medical and Chirurgical Faculty of the State of Maryland is a private corporation. *Regent's case,* 9 G. & J. 365.

Though it may have some *quasi* public functions, it is in no sense an instrument of State government. It is not within its province or powers to perform governmental functions. The Legislature has thus endeavored to farm out or bargain away a governmental function to a private artificial person which has nothing to do with the machinery of State government, forms no part thereof, and is not responsible to the State for misfeasance or malfeasance. This the Legislature cannot do. *Guthrie on the Fourteenth Amendment,* p. 74. Suppose the corporation did not appoint the examiners, the purpose of the law would be defeated, as the State would be powerless to compel a private corporation to perform a governmental duty. The constitutional validity of a law is tested, not by what has happened, but what may happen by virtue of its authority. *Ulman case,* 72 Md. 587.

If this be true with reference to a remedial law, it must have greater force when applied to a penal statute, such as the one now before the Court for its construction. Of course, if the Executive, or any competent officer of the government, were required by the Legislature to appoint, the law would be complete and effective. In the Act of 1888, chapter 429, and in the West Virginia statute passed upon in the *Dent case,* the Board of Health is the efficient agent of government; but here is a law which relinquishes and commits to a body corporate, not an officer or agent of government, a most important government function, a law which could be set at naught any day by a dissolution of the private corporation, whose seal is essential to the

granting of the license.   Art. 43, section 47.   The cloth-
ing of a single individual with such powers hardly falls
within the domain of law.   *Baltimore* v. *Radecke*, 49 Md.
217.   The citizen is thus deprived of the privilege of ap-
proaching the State and showing that he is entitled to pur-
sue his vocation, because the Legislature has surrendered
its powers in this regard exclusively to a private individual.
Is this a mode of appointment contemplated by the fun-
damental law of the State ?   *Cooley on Constitutional Lim-
itations*, 249.   If the Legislature is competent to farm out
one of its police powers, it can delegate all of them to
private individuals who have no connection with the gov-
ernment or responsibility thereto ; and this action would
be destructive of all government.

In no other instance, in the appointment of the numerous
boards entrusted with the administration of police powers,
has the Legislature attempted to make such an unwar-
ranted delegation of power.

3. The law in question seems also to be obnoxious to
section 9, Article 2, Constitution of Maryland, which
charges the Governor with the faithful execution of the
law.   Is a law to be held constitutional when the agency
of its execution is farmed out to a person not responsible
to the State, and when the Executive is, therefore, power-
less to enforce it ?   The State must execute its laws
through its own officers, and not private individuals with
powers without correlative duties.   Laws, if properly
framed, have no perishable quality.   They exist until re-
pealed.   An office for its execution created by the Consti-
tution or by the Legislature, must co-exist with the law,
so that it may not fall by reason of inherent weakness.   If
the appointing power were in the Governor, or any other
officer of the State, he could be reached by *mandamus*, if
he failed to perform this ministerial function.   *Brown* v.
*Bragunier*, 79 Md. 236; *Baltimore* v. *State*, 15 Md. 456.
How can a private corporation be compelled to perform
hese functions which this law purports to confer ?

4. How are the members of the Board of Examiners to take the oath of office prescribed by section 6, Article 1, of the State Constitution ? They report, under the law to a private person ; they seem to reach the State only through the intermediation of the appointing power ; and they appear to have no direct contact or connection with the government.

5. This law seems also to be in violation of the seventh Article of the Declaration of Rights ; for although the word " appoint " is used in the Act, an examination of the statute shows that the board is intended to be *elected* by a limited and favored number of citizens, all others being deprived of the right of suffrage in the premises. Art. 43, sec. 40, *Code, P. G. L.* See also *Act of 1798, Chap. 105, Sec. 4.*

6. The power delegated by this law to the Medical and Chirurgical Faculty appears to be a grant of corporate power not authorized by section 48, Article 3, of the Constitution. It is beyond the legitimate range of corporate powers to have a State Board which is intended to perform govermental functions, in the language of the law " representing" the corporation itself (*Art. 43, Section 40, Code P. G. L.*) and reporting to it (*Section 52 Ibid.*), instead of representing and reporting to the State.

7. The power granted to this corporation is not in the nature of a privilege, but a monopoly ; and it is, therefore, in contravention of Article 41, of the Declaration of Rights. I do not think, at this stage of our government and the development of institutions of educational training, that it can be contended that the Legislature is competent to grant to the Baltimore University, for instance, the exclusive power to grant permits to practice medicine in this State. How, then, can it be granted to *any* private body corporate?

8. This Court has held that statutes similar to those now before you must be reasonable regulations ; and that what are reasonable is necessarily a judicial question. *Long* v. *State,* 74 Md. 565. It has further held that clothing a single individual with such power is not reasonable.

*Baltimore* v. *Radecke*, 49 Md. 217. How, then, can the grant of similar functions to a single artificial person be deemed more reasonable?

9. Furthermore, the Legislature has essayed to define the qualifications of applicants for registration in section 61, Article 43, *Code P. G. L.* This is so essential a part of the law as to become a necessary averment in the charging part of each and every indictment. *O'Connor* v. *State*, 46 Nebraska, 158. It is the gist and essence of the whole law; and, yet, the definition is such a confused medley of words as to be wholly unintelligible and inexplicable. The law should, therefore, for this reason alone be declared void. *Campbell's Case*, 2 Bland, 210; *Chew Heong Case*, 112 U. S. 555. Furthermore, in the line of this objection, it may be asked what becomes of Article 43, sections 48–57 inclusive, enacted in 1890, chapter 604, referring to the adulteration of food, etc.? The Act of 1892, chapter 296, ignores and confuses these sections, thus adding to the difficulty.

In the *Regents' Case*, 9 G. & J. 365, 383, the Court did not decide that it was a valid exercise of legislative power to prescribe that, *nolens volens*, a private corporation shall perform governmental functions. No; merely the *converse* of this proposition was *incidentally* passed upon. The Court held, not that the granting of such a power was valid in the first instance, but that it "might he revoked at the pleasure of the Legislature" after the grant had been made. Even though the same question had been therein decided, this Court would not hesitate to review, and, if necessary, to reverse its former adjudication in a matter affecting public policy, where the decision, as in this case, is old and not adapted to modern conditions.

*Archibald H. Taylor* (with whom were *Isidor Rayner*, Attorney-General, *E. P. Keech, Jr.*, and *John Peirce Bruns*, on the brief), for the appellee.

It is well settled that the Legislature has the power to enact laws for the protection of the health and welfare of

their respective citizens, and to prescribe the methods and conditions under which certain trades, callings and professions must be carried on. *Dent* v. *W. Va.*, 129 U. S. 114; *Mugler* v. *Kansas*, 123 U. S. 623; *Singer* v. *State*, 72 Md. 390; *Iowa Med. Association* v. *Schrader*, 87 Iowa, 659; *State* v. *Broadbelt*, 89 Md. 565; *Williams* v. *Dental Examiners*, 93 Tenn. 619; *State* v. *Creditor*, 44 Kansas, 565. The description by the Court of the statute considered in the case of *Dent* v. *West Virginia*, 129 U. S. 626, is a fair and accurate description of the statute before the Court in this case.

" We perceive nothing in the statute which indicates an intention of the Legislature to deprive any one of his rights. No one has the right to practice medicine without having the necessary qualifications of learning and skill; and the statute only requires, that whoever assumes, by offering to the community his services as a physician, that he possesses such learning and skill, shall present evidence of it by a certificate or license from a body designated by the State as competent to judge of his qualifications."

That such a law in any way violates the Fourteenth Amendment to the Constitution of the United States, or any part of it, or the Twenty-third Article of our Bill of Rights, has long since been settled, and certainly no vestige of such a question remains since the decision of this Court in *State* v. *Broadbelt* above cited.

Some criticism was made below because under section 40 of the Act, 1892, chapter 296, the duty of conducting the examinations and issuing the license or " permit " which should entitle the applicant to official registration was laid upon two boards representing the two medical societies of the State and chosen by them from their membership. It will be remembered, that this is not the act of official registration by the State, which is confided by the Act to a State officer, duly appointed and known to the law, viz., the Clerk of the Circuit Court, and by whom such registration would be in all particulars appropriate and con-

venient both to the applicant and to those persons in the
community seeking the notice it conveys.   But it is merely
the scientific and expert examination which is thus confided
to these well recognized public corporations representing
between them both classes, into which all medical practi-
tioners are generally and practically divided and classified.
No complaint can be made that the term of this section
could provide more carefully for an unprejudiced board to
conduct the examinations, and in this and the succeeding
sections the most careful provision is made for a broad,
comprehensive and equal examination.   It is well settled,
that the Legislature can create such a board, or *quasi* cor-
poration which shall exercise the duties of examination or
other policing acts imposed by this Act, or can impose ·
these duties upon a corporation already incorporated, like
these medical societies, who can then perform the act
through the appropriate agency of their officers or commit-
tees.   This proposition was carefully laid down in the
*Slaughter House cases*, 16 Wall. 36.

Our Constitution, section 10, Article 2, gives the amplest
power to the Legislature to provide for the appointment of
officers upon whom are laid public duties in such way as it
may see fit, when after conferring upon the Governor the
duty of this appointment, it adds, " unless a different mode
of appointment be prescribed by the law creating the office."
See *Baltimore* v. *State*, 15 Md. 376, known as the Police
Board Case, where the amplest power is claimed for the
Legislature in this particular.   " When, therefore, the Leg-
islature has created an office by Act of Assembly, the
Legislature can designate by whom and in what manner
the person who is to fill the office can be appointed." See
*Davis* v. *State*, 7 Md. 151; *Chicago R. R.* v. *Nebraska*, 170
U. S. page 4.

Similar methods of the appointment of these Boards of
Examiners are prescribed by the statutes of Indiana and
California, both of which have been recognized as altogether
valid and constitutional.   See *Cal. Penal Code*, vol. 4, ›

625, sec. 2; *Ex parte Frazer*, 53 Cal. 94; *Ex parte McNulty*, 77 Cal. 164; *Rev. Stat. of Ind.*, 1888, vol. 2, chap. 47, sec. 4250; *Wilkins* v. *State*, 113 Ind. 514. This last case points out that the recognition of the existing board by subsequent Acts of the Legislature in itself creates it a valid corporation, charged with the public duty thus laid upon it, whatever might have been the question originally as to whether it had been made a corporation by the original Act or not. In our State the board created in the manner in which it exists now by the Act of 1892, had been recognized and additional or similar powers and duties imposed upon it by the Acts of 1894, and 1896 on this subject.

PAGE, J., delivered the opinion of the Court.

The appellant was indicted for unlawfully practicing medicine and surgery, in the State of Maryland, without being registered as a physician or surgeon in the Registry of Physicians and Surgeons.

The question presented by the appeal is the validity of the Acts of 1892, ch. 296, 1894, ch. 217 and 1896, ch. 194; all of which are incorporated in Mr. Poe's Supplement to the Code as Article 43, secs. 39 to 63, sub-title Practitioners of Medicine. These statutes are the final results of a series of successive enactments, which have created a well-defined system for the regulation of the practice of medicine in the State. Inasmuch as extended reference was made to them in the case of *Manger* v. *The Board of State Medical Examiners*, decided at the present term, *ante* p. 658, we need refer here, to only so much of the system now in force, as is required for a proper consideration of the questions involved in this appeal.

The Acts provide for two boards of examiners; one to be appointed by the Medical and Chirurgical Faculty of the State of Maryland, the other by the Maryland State Homeopathic Medical Society. Each of these boards is empowered to grant licenses to practice medicine in the State, and no one is allowed so to practice unless he has

first obtained such license.   The 49th section of the Article contains an exception to this general rule, by the provision that the sub-title shall not apply "to commissioned surgeons of the United States Army, Navy or Marine Hospital Service, to physicians or surgeons in actual consultation from other States, or to persons temporarily practicing under the supervision of an actual medical preceptor."   It is contended on the part of the appellant that these exemptions from the burden of obtaining a license to practice is an unjust and unreasonable discrimination between persons engaging in the medical business or profession, and that its effect is to render the whole Act invalid as being in contravention of the Fourteenth Amendment of the Constitution of the United States.   It is not questioned, as indeed it could not be, that the State under the police power has authority to pass such reasonable laws for the protection of the health, morals and safety of the public as its Legislature, in the exercise of its discretion, may deem necessary and proper.   But the contention is that the provisions of the section by which the exemptions from licensing are declared are not just and reasonable and bear no proper relation to the objects sought to be accomplished ; and the argument is that while a certain class of physicians are not required to register, it is an infringement of the principle of equality to require registration of others who do not belong to the favored class.   This objection, therefore, amounts to no more than to affirm that the classification made by the statutes is purely arbitrary ; for all the authorities agree that if a classification be just and reasonable and bears a proper relation to the subject-matter of the Act, no objection to its validity can be raised.   The Fourteenth Amendment was not intended to restrain the Legislature from such reasonable provisions as are necessary for the protection of the public health, and in doing this conditions may exist that make it most essential to impose upon some persons greater burdens than upon others not similarly situated. " The great purpose of the amendment is to exclude every-

thing that is arbitrary and capricious in legislation affecting the rights of the citizen." *Dent* v. *The State of W. Virginia,* 129 U. S. 114–124; *Broadbelt* v. *State,* 89 Md. 579; *State of Maryland* v. *Knowles* (decided Feb. 15th, 1900), *ante* p. 646 ; *Singer* v. *The State,* 72 Md. 464; *Barbier* v. *Connolly,* 113 U. S. 27; *Mugler* v. *Kansas,* 123 U. S. 623; *Yick Wo.* v. *Hopkins,* 118 U. S. 356.

Here the purpose of the Acts in question was the protection of the public from the consequences of ignorance and incapacity in the practice of medicine and surgery. As a means of effecting this they exact from the persons proposing to engage in the business a certain degree of skill and learning, to be evidenced by a certificate upon which the public may rely. If the conditions surrounding all persons who desired to practice were alike, there could be no differences made as to the terms upon which a certificate could be obtained. But if there are differences as to conditions and situations, by which it becomes reasonable that greater precautions are required in some cases than in others, classes may be formed by which certificates can be granted to some without examination, and by which others may be exempted altogether from the burden of being registered. But these classes must be created upon considerations only that are. promotive of the public interests; and if they are so created,. they do not constitute an unlawful discrimination and do not impair the "equal right which all can claim in the enforcement of the laws". The case of *The State of N. H.* v. *Pennoyer,* 65 N. H. 113, 5 L. R. A. 709, relied upon by the appellant to sustain his contention, is nowise in conflict with what has just been said. In that case the Act was pronounced invalid because the exemption from the burden of obtaining a license was made to depend, "not on integrity, education and medical skill, but upon a continuous dwelling in one place for a certain time." Such a discrimination was undoubtedly arbitrary and founded upon no reason having relation to the subject. It had no regard to competency or to any material difference of situation, and

if maintainable, no reason could be assigned why "a mon-
opoly of the business might not be given" to favored phy-
sicians. But that cannot be said of the provisions of the
section and the law, now being considered. Those to whom
the provisions of the Acts do not apply are, 1st, commis-
sioned surgeons of the U. S. Army and Navy, and Marine
Hospital; 2nd, physicians and surgeons in actual consulta-
tion from other states; and 3rd, persons temporarily prac-
ticing under the supervision of an actual medical preceptor.

The reasons for these exemptions from the operation of
the Act are apparent and are entirely of a public character.
The competency of the first class is assured by the exac-
tions required of them before they could become commis-
sioned in the service of the United States as physicians or
surgeons. So also physicans in a Marine Hospital are sel-
ected for their special adaptation and skill for that work.
There could be no public reason therefore that these med-
ical officers should be required, for the protection of the
public, to be registered. Nor can any reason, having in
view the public protection, be assigned for requiring certifi-
cates of the remaining classes. Neither of these classes can
be said to be practitioners within this State. The physcian
from another State, "in actual consultation," has co-oper-
ating with him a registered physician. To require him to
license as for general practice, would have no other effect
than occasionally to deprive the patient and the local physi-
cian of the benefits of the advice of some of the most em-
inent and skillful gentlemen in the profession. Moreover,
as to both the second and third classes the public are fully
protected from the incompetency of the foreign physician
and the student by the presence and supervision and re-
straints of the certified physicians of the State. This sec-
tion therefore cannot be objected to as in any respect arbi-
trary or unreasonable, or as in any manner creating any un-
just discrimination.

Another objection raised, is that these Acts commit the
execution of the law to "a body corporate not an officer or
agent of the government."

One of the bodies charged with the duty of appointing one of the Boards of Medical Examiners, is the Medical and Chirurgical Faculty of the State of Maryland. It was incorporated in 1798, and by the 105th chapter of the Acts of that year, it was clothed with authority to elect twelve persons to be styled "The Medical Board of Examiners for the State of Maryland," whose duty it was to grant licenses to persons qualified to practice medicine and surgery. In referring to the power thus conferred upon the Medical and Chirurgical Faculty, this Court in *The Regents'* case, 9 G. & J. 388 *et seq*, said, that "a corporation may be private, and yet the Act or charter of incorporation contain provisions of a purely public character introduced solely for the public good and as a general police regulation of the State." The Court cites as instances, the English statutes creating the College of Physicians in London and founding "The College of Barbers and Surgeons." It then proceeds ; "The Legislature possesses power to regulate the internal police of the State    *    *    *    and having regard to the health and lives of the citizens of the State, to adopt from time to time such wholesome regulations as may be deemed best calculated to guard against the evils and mischiefs attendant upon the practice of physic and surgery by ignorant and incompetent persons. That the Legislature might at any time, without the intervention of a corporation, have provided for the organization of a board or boards for the examination of persons applying for admission to practice physic or surgery and imposed a penalty upon any who should practice without having first obtained a license from such board and afterward from time to time have adopted other means more or less efficient for the promotion of the desired end, or, whether wisely or not have removed the restriction altogether, is a proposition not to be questioned." The Court further proceeds to observe that the Legislature, with the object of encouraging the acquisition of knowledge and of shielding the community from the pernicious effects of the ignorance of unskillful pretenders, had authorized the

Medical and Chirurgical Faculty, "as it had the right to do," to appoint a board of examiners who should examine and issue licenses, as a means of effecting the end in view, and who, "for that purpose may be considered as agents or officers of the State."    In the *Slaughter House cases*, 83 U. S. 36 to 130, where it was contended that the Legislature had exceeded its power in creating a private corporation for the special purpose of maintaining the Slaughter House for the City of New Orleans, the Court said : "If this statute had imposed on the City of New Orleans precisely the same duties, accompanied by the same privileges which it has on the corporation which it created, it is believed that no question would have been raised as to its constitutionality : * * * Why cannot the Legislature confer the same powers on another corporation, created for a lawful and useful public object, that it can on a municipal corporation already existing.    That wherever a Legislature has the right to accomplish a certain result and that result is best obtained by means of a corporation, it has the right to create such a corporation and to endow it with powers necessary to effect the desired and lawful purpose, seems hardly to admit of debate."

Nor does the method of the appointment of the Medical Boards affect the validity of the law.    Section 10 of Article 2 of the Constitution of the State, confers upon the Governor the authority " to nominate and by and with the advice and consent of the Senate, appoint " all civil and military officers, whose appointment or election is not therein otherwise provided for ; " unless a different mode of appointment be prescribed by the law creating the office." This provision simply means, as was said in *Davis* v. *The State*, 7 Md. 161, " that the Governor shall have the power to fill all offices in the State, whether created by the Constitution or by Act of Assembly, unless otherwise provided by the one or the other.    When, therefore, the Legislature has created an office by Act of Assembly, the Legislature can designate by whom, and in what manner the person who is to fill the office shall be appointed."

Some comment was made upon the effect of the 61st section, but inasmuch as that was fully considered and passed upon in *Manger* v. *The Board of Medical Examiners*, decided by this Court at the present term, *ante* p. 658, we need only to refer to that case.   We have now considered all the questions that were pressed upon us at the hearing or are contained in the briefs of the respective counsel.  We may add to what has already been said, however, that we find nothing in any of these statutes that is obnoxious to constitutional objection.   Laws similar to those regulating the practice of medicine or of surgery and of many trades have frequently been under consideration in this and other courts, and have been maintained as valid enactments.  We refer to some of the cases, to which many more could be ·added. *Dent* v. *West Va.*, 129 U. S. 114; *Wilkins* v. *State*, 113 Ind. 514; *State* v. *Knowles, ante* p. 646, and cases there cited; *Ex parte Frager*, 54 Cal. 94; *Ex parte McNulty*, 77 Cal. 164; *Iowa Med. As.* v. *Schrader*, 87 Iowa, 659; *State* v. *Broadbelt*, 89 Md. 579, and other cases already cited above.

Finding no error the judgment will be affirmed.

*Judgment affirmed.*

(Decided March 21st, 1900).