STATE, *ex rel.* JOHN P. DAVIS, *v.* FRANK EVANS.

(*Knoxville.* September Term, 1909.)

1. **COUNTY SUPERINTENDENT OF SCHOOLS.** Elected without certificate of qualification cannot, in a quo warranto proceeding, show his eligibility by allegation of improper question asked on examination, when.

In a proceeding in the nature of a *quo warranto* to test the right of the defendant to hold over the office of county superintendent of public schools, after the expiration of his regular term, in which the relator claimed that he was duly and regularly elected to the office, and that he qualified by giving bond and taking the oath of office required by law, but that defendant refused to turn over to him the books and papers appertaining thereto, on the alleged ground that the relator was ineligible, because he was not in possession of the certificate of qualification from the State board of education as required by statute (Acts 1895, ch. 54), the court cannot consider the relator's contention that his failure to receive the certificate arose out of a mistake in an examination question asked him, and that if the question had been properly stated, he could and would have answered it correctly, and would have then received the certificate. (*Post, pp.* 187, 188.)

Acts cited and construed: Acts 1895, ch. 54.

2. **CONSTITUTIONAL LAW.** Statute requiring county superintendents of public schools to possess literary and scientific qualifications to be evidenced by certificate of State board of education is not unconstitutional as delegating legislative power.

The general school law (Acts 1873, ch. 25), by section 8 thereof, created the office of county superintendent of public schools, and provided that he should be a person of literary and scien-

tific attainments, and, by section 31 thereof, prescribed the subjects to be taught in the public schools; and said section 8 was amended by a subsequent statute (Acts 1895, ch. 54) prescribing the same qualifications, and also requiring candidates for the office, previous to the election, to file certificates of qualification given by the State board of education, after undergoing a public examination, as a prerequisite to eligibility.  Held, that said section 8, as originally enacted and as amended, necessarily referred to said section 31 prescribing the subjects to be taught; and the proficiency required in literature and science is in respect to those subjects, and the said amendatory statute (Acts 1895, ch. 54) is not unconstitutional, as delegating legislative power to the board, because the board is only made a legislative agency for executing the purpose of the legislature. (*Post, pp.* 188-193.)

Acts cited and construed:  Acts 1873, ch. 25, secs. 8 and 31; Acts 1895, ch. 54.

Cases cited and approved:  Leeper v. State, 103 Tenn., 500, 523, 526; People, ex rel., v. Kipley, 171 Ill., 44; Ex parte Bassitt, 90 Va., 679; People v. Dunn, 80 Cal., 211; Commissioners v. Smith, 22 Colo., 534; Blue v. Beach, 155 Ind., 121; Scholle v. State, 90 Md., 729; State v. Thompson, 160 Mo., 333; Hurst v. Warner, 102 Mich., 238; State, ex rel., v. Stewart, 74 Wis., 620; Commissioners v. Sisson, 189 Mass., 247; Saratoga Springs v. Gas Co., 191 N. Y., 123.

Case cited and distinguished: Wright v. Cunningham, 115 Tenn., 445.

3.  **COUNTY SUPERINTENDENT OF SCHOOLS.**  Statute requiring qualification by certificate is mandatory, and not merely directory.

The mandatory statute (Acts 1895, ch. 54) prescribing the qualifications of county superintendents of public schools, and requiring them to possess a certificate of qualification given by the State board of education, is mandatory, and not merely directory, as shown by the clear intention of the legislature to

State, ex rel., v. Evans.

make eligible for election only such persons as could comply with the conditions indicated, which intention is emphasized by the provision giving the county court power to remove the superintendent for inefficiency. (*Post, p.* 193.)

Acts cited and construed: Acts 1895, ch. 54.

4. **SAME.** Relator submitting question of his eligibility cannot require it to be tested by independent proceeding by defendant.

Where, in a proceeding in the nature of a *quo warranto* to test the right of the defendant to hold over the office of county superintendent of public schools, after the expiration of his term, the relator submits in his bill, to the determination of the court, the question of his eligibility to the office to which he had been elected, he cannot then successfully contend that, because he had been elected and had qualified by giving bond and taking the required oath, defendant should test relator's eligibility and right to office by some independent proceeding. (*Post, pp.* 193, 194.)

5. **QUO WARRANTO.** Incumbent holding over is not a usurper for failing to take the required oath, when.

In a proceeding in the nature of *quo warranto* to test the right of the defendant to hold over the office of county superintendent of public schools, after the expiration of his term, the relator, newly elected to the office, cannot successfully contend that the defendant was a usurper, because he only took the oath of office, and did not take the oath to support the constitution of the United States and that of Tennessee, especially where it does not affirmatively appear that such oath was not taken. (*Post, p.* 194.)

Cases cited and approved: Staggs v. State, 3 Hum., 372; State v. Allen (Tenn. Chy. App.), 57 S. W., 189.

State, ex rel., v. Evans.

FROM CLAIBORNE.

Appeal from the Chancery Court of Claiborne County. T. A. R. NELSON, Chancellor.

JOUROLMON, WELCKER & SMITH, for relator Davis.

CARR & JONES, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This is a proceeding, in the nature of a *quo warranto*, to test the right of the defendant to hold the office of county superintendent of public schools for Claiborne county, holding over at the expiration of his regular term, which ended on the first Monday in January, 1909. The relator charges that on the day last mentioned he was regularly elected by the county court, the constituent body, to the office, by a vote of 12 in his favor to 7 in favor of the defendant, only nineteen justices being present and voting. He alleges that he was declared duly elected; that he gave the bond required by law, and took the oath of office, but the defendant refused to turn over to him the books and papers appertaining thereto, alleging, as ground for such action on his part, that the relator was not eligible

to the office, and therefore that his election was void.
The point of ineligibility in controversy, as appears
from the bill, is that the relator was not in possession
of the certificate from the State board of education,
required by chapter 54, p. 70, Acts 1895. It is alleged
that the relator really possessed the qualifications re-
quired by the act, and that he was entitled to the cer-
tificate which it is the business of the board to issue,
and that his failure to receive it arose out of a mistake
on the part of the board in stating one of the questions
submitted for his examination. It is alleged that the
question—one in mathematics—was improperly stated
by the board, and if properly stated he could, and
would, have given a correct answer, and would then
have received the certificate. These are matters, of
course, with which we can have no concern in the pres-
ent proceeding. Aside from all this, however, it is in-
sisted that the act in question is unconstitutional, and
for that reason, if for no other, the relator was duly
elected, and was entitled to the office. The purpose
of the bill is to question the right of the defendant to
hold over, the charge being that he is a usurper of the
office in his attempt to hold over, and, incidentally
thereto, it is alleged that the relator is the person en-
titled to administer the duties of the office, because of
his said election.

There is no controversy in the record that the rela-
tor was elected in the manner above stated, and that,

if he was eligible to the office, the defendant is a usurper, and should be restrained from further interference.

The case turns upon the constitutionality of the act above referred to. This act purports to amend section 8 of the general school law, which is chapter 25, p. 41, of the Acts of 1873.

Section 8, as it appears in the original act, reads as follows:

"Sec. 8. Be it further enacted, there shall be a county superintendent for each county, who shall be elected by the county court at its April or July term, 1873, and after 1874 he shall be elected biennially in January, and no member of the county court shall be eligible to said office. *He shall be a person of literary and scientific attainments, and, when practicable, of skill and experience in the art of teaching,* shall hold his office for two years, and shall receive such pay for his services as may be allowed him by the county court, to be paid upon the order of the chairman or judge of the county court by the county trustee. He shall be subject to removal from office for misbehavior or inefficiency at any time, by the county court: Provided, that the causes for such removal shall be communicated to him in writing."

We have written in italics the part of this section which was amended by chapter 54 of the Acts of 1895. In this act the language above italicized is stricken out and the following substituted:

"Said county superintendent shall be a person of lit-

erary and scientific attainments, and of skill in the
theory and practice of teaching: Provided, that preced-
ing each biennial election, or any election to fill a va-
cancy for county superintendent of schools, each appli-
cant shall file with the chairman of the county court a
certificate of qualification given by the State board of
education: Provided, that on the first Monday in Octo-
ber preceding each biennial election for county super-
intendent of schools, each applicant for said office shall
undergo a public examination at the county seat of the
county in which he or she is an applicant, by and be-
fore a commission of three residents of the county, said
commission to be previously appointed by the chairman
of the county court, and to be citizens who, by education
and experience, are most eminently qualified to hold
said examination, the same to be held under such rules
and regulations as may be prescribed by the State
board of education: Provided, that if qualified as at-
tested by said examination, said applicant shall receive
a certificate of qualification by the State board of edu-
cation."

It is insisted in behalf of relator that this amendment
devolves legislative power upon the State board of edu-
cation, because it is a legislative function to prescribe
the qualifications of public officers. It is argued that the
language of the legislature in stating the qualifications
required, that he "shall be a person of literary and scien-
tific attainments, and of skill in the theory and practice
of teaching," is so general as to leave it practically

State, ex rel., v. Evans.

within the power of the State board to declare the quali-
fications necessary for the office, since they can exact
a very high grade of attainments, or may be content
with a very low grade, and they may indicate the dif-
ferent subjects upon which proficiency may be required
within the wide range covered by the words "literary
and scientific attainments."

There is plausibility in the objection, but no real
force.   The act of 1873, which is amended, laid down,
in section 31, the subjects to be taught in the public
schools.   It was with reference to these, of course, that
the provisions of section 8 were enacted.   It is noted
that section 8, as originally written, prescribed, in sub-
stance, the same general qualifications.   They meant,
of course, a reasonable degree of attainment in litera-
ture and science, in respect of the subjects that were
to be taught, to the end that the county superintendents
might be able to exercise proper judgment in the se-
lection of teachers and in the oversight of their work.
Before section 8 was amended, the duty was devolved
upon the county court of judging the qualifications of
the county superintendent to be elected.   Under the
amendment means were provided, through boards com-
posed of skilled persons, of ascertaining whether a
candidate could come within the description, or list of
qualifications, indicated by the act.   There was in this
no delegation of legislative power, but simply the pro-
vision of administrative agencies for the purpose of
aiding in the execution of the purpose of the legisla-

ture. The legislature itself prescribed the necessary qualifications, and the boards created and referred to simply determined whether given persons came within those requirements, or were possessed of those qualifications. It was impracticable for the legislature itself to lay down, with precision, the degree of efficiency in literature and science that the county superintendents should possess. In the nature of things, this must be left somewhat indeterminate, and it was highly proper that the ascertainment of the exact degree of learning necessary to carry out the purpose of the act should be left for the action of competent boards. See, on the general principle, the following authorities: *Leeper* v. *State,* 103 Tenn., 500, 523, 526, 53 S. W., 962, 48 L. R. A., 167; *People, ex rel.,* v. *Kipley,* 171 Ill., 44, 49 N. E., 229, 41 L. R. A., 775, 782, 783; *Ex parte Bassitt,* 90 Va., 679, 19 S. W., 453; *People* v. *Dunn,* 80 Cal., 211, 22 Pac., 140, 13 Am. St. Rep., 118; *Pueblo County Com'rs* v. *Smith,* 22 Colo., 534, 45 Pac., 357, 33 L. R. A., 465; *Blue* v. *Beach,* 155 Ind., 121, 56 N. E., 64, 50 L. R. A., 64, 69, 70, 80 Am. St. Rep., 195; *Scholle* v. *State,* 90 Md., 729, 46 Atl., 326, 50 L. R. A., 411, 414; *State* v. *Thompson,* 160 Mo., 333, 60 S. W., 1077, 54 L. R. A., 950, 952-953, 83 Am. St. Rep., 468; *Hurst* v. *Warner,* 102 Mich., 238, 26 L. R. A., 484, 491, 47 Am. St. Rep., 525; *State of Wisconsin, ex rel.,* v. *Stewart,* 74 Wis., 620, 43 N. W., 947, 6 L. R. A., 394; *Comm.* v. *Sisson,* 189 Mass., 247, 75 N. E., 619, 1 L. R. A., (N.

S.), 752-755, 109 Am. St. Rep., 630. And see the full discussion of the general subject by Cullen, C. J., in *Trustees of Saratoga Springs* v. *Saratoga, etc., Gas Co.,* 191 N. Y., 123, 83 N. E., 693, 18 L. R. A. (N. S.), 713, 718, et seq. The case of *Wright* v. *Cunningham,* 115 Tenn., 445, 91 S. W., 293, cited by complainant's counsel, is not at all in conflict with the principle we have invoked as the basis of the present decision.

We need not pursue the subject. We are of the opinion that the amendment is clearly constitutional.

It is insisted that the terms of the amendment are not mandatory, but only directory. We think this is a mistaken view. It was the clear purpose of the legislature to make eligible for election only such persons as could comply with the conditions indicated. This general purpose is emphasized by the provisions of the original section giving the county court power to remove the county superintendent for inefficiency.

There are some points of alleged unconstitutionality insisted upon other than the one above referred to, but we do not think they deserve special consideration in this opinion. Suffice it to say that we have examined them, and find no merit in them.

It is insisted that since the relator was elected by the county court, and had executed bond, and had taken the oath, he should be permitted to take and administer the office, and the burden of establishing his ineligibility should be cast upon the defendant, and be presented by him in some independent litigation. Whatever force

might be in this, as an original suggestion, it cannot be considered here, because the relator himself submitted in his bill, to the determination of the court, the question of eligibility.

It is insisted that, at all events, the defendant should be declared a usurper because, when he was inducted into office, in 1907, he did not take the oath to support the constitution of the United States, and of the State of Tennessee, but that he took only the oath of office. We do not think there is any sufficient allegation in the bill upon this subject (Gibson's Suits in Chancery, sec. 455), and, if there was, it does not affirmatively appear that he did not take the oath referred to, and for these reasons the point suggested is not well taken (*State* v. *Allen* [Tenn. Ch. App.], 57 S. W., 189; *Staggs* v. *State*, 3 Humph., 372). In saying this, we are not to be understood as holding that the inadvertent omission to take the oath referred to would result in a deprivation *ipso facto* of the defendant's official character.

On the grounds stated, we are of the opinion that the decree of the chancellor, in favor of the defendant, must be sustained.