STATE OF MARYLAND, Ex Relatione, FRANK M. EBERT, *vs.* DANIEL J. LODEN, a Justice of the Peace Presiding at the Western Police Station, in the City of Baltimore.

*Police Power: regulation of moving picture machines; Acts of 1910, Chapter 693. Constitutional law: title of statute. Police power: delegation of—. Trial by jury: summary jurisdiction given to justice of the peace.*

The Act of 1910, Chapter 693, for the regulation of moving picture machines in the City of Baltimore for the purpose of protecting the public from injury and loss of life, was passed in the exercise of the police power of the State, and does not violate either the Federal or State Constitution.

pp. 380-381

This act does not discriminate against those who are engaged in the business at the time of the passage of the act; section 4 applies only to them; this section gives them sixty days after

the first of May within which to procure a license required by
the succeeding section of the act, and permits the persons
then in business to continue, without being considered as vio-
lating the statute, provided that they before the expiration
of said sixty days procure such license.    In the succeeding
section of the act, "such persons," as there used, refers *not to*
those then engaged in the business, as referred to in section 4,
but refers to that class of persons named in the preamble
and "whereas clauses" of the act.                pp. 381-382

The title of the act sufficiently indicates its subject, as all its
sections and provisions are germane to the matter of moving
picture machines there referred to.                      p. 384

While the title of a statute must indicate the subject of the
act, it need not give an abstract of its contents, nor mention
the means by which the general purpose is to be accom-
plished.                                                p. 384

The police power of the States may be delegated to subordi-
nate boards and commissions, and a reasonable and just exer-
cise by them of the delegated power will be upheld.     p. 384

The jurisdiction conferred by the Act of 1910, Chapter 693,
upon justices of the peace, relating to violations of regula-
tions for moving picture machines contained in the act, is
constitutional and valid, although no provision is made there-
in for a jury trial.                                    p. 386

*Decided February 9th, 1912.*

Appeal from the Baltimore City Court (ELLIOTT, J.).

The cause was argued before BOYD, C. J., PEARCE,
BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Watson E. Sherwood* and *J. Wallace Bryan* (with whom
were *Lemmon & Clotworthy* on the brief), for the appellant.

*Emory L. Stinchcomb* and *Isaac Lobe Straus,* the Attorney
General (with whom was *Albert S. J. Owens* on the brief),
for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the relator, Frank M. Ebert, on the 22nd day of October, 1910, was arrested upon a warrant charging him with having unlawfully operated a moving-picture machine in the City of Baltimore without having first secured a licence in accordance with the provisions of Chapter 693 of the Acts of 1910 of the General Assembly of Maryland, and when carried before the respondent, a police magistrate of that city, he protested against and denied the jurisdiction and authority of the magistrate to find him guilty of any punishable offence upon the facts alleged in the warrant, for the reason that said alleged Act of Assembly which he was charged with having violated, was unconstitutional and void. The case was from time to time postponed, until on the 6th day of December, 1910, the relator, after unsuccessfully protesting against the jurisdiction of the magistrate for the reason stated above, asked for a jury trial, which was refused him, but the justice took his recognizance for his appearance before him at a later day therein named. Before the case was heard, however, the relator filed his petition in the Baltimore City Count alleging the facts as we have stated and further alleging therein:

First: That the said Act of 1910 violates the Fourteenth Amendment to the Constitution of the United States by unjustly, arbitrarily and unreasonably discriminating against the petitioner and all others in like situation with him, who were engaged in the vocation of moving-picture machine operator in the City of Baltimore at the time of the passage of said act, by depriving him and all others in like situation with him of his and their liberties and property without due process of law, and denying to him and them the equal protection of the laws.

Second: That the said act is also void for the reason that it violates the Constitution of Maryland:

(1) For the reasons assigned above by which, it is alleged, it contravenes the Federal Constitution.

(2) Because it embraces more than one subject and its subject-matter is not sufficiently described in its title.

(3) It assumes unlawfully to delgate to a certain board of examiners attempted to be created therein, legislative powers and discretion, contrary to Article 8 of the Bill of Rights of the State of Maryland.

(4) Because, as interpreted, it vests complete summary jurisdiction in police magistrates and justices of the peace of Baltimore City to try and punish violations under it, without providing for trial by jury or for any appeal to a higher Court.

The petition then prays the Court to issue its writ of *certiorari* commanding the justice, Daniel J. Loden, to send and certify to such Court the record of the proceeding in the case, together with the writ, that the jurisdiction of the magistrate might be inquired into. The writ was issued as prayed, to which a return was made and filed by the justice of the peace, termed the defendant in the *certiorari* proceedings, and by him a motion was made to quash the writ. The Court after hearing argument held that the petitioner having prayed a jury trial was, under the act, entitled to a trial by jury, and thus passed an order quashing the writ and remanding the case to the justice of the peace for further proceedings, to be had in conformity with his opinion therein expressed. It is from this order that the relator has appealed.

The title of the Act of 1910, Ch. 693, is, "An Act to add a new article to the Code of Public Local Laws, to be known as 'Moving-Picture Machine Operators,' sub-title 'Baltimore City,' and be numbered—".

Following the title are several whereas clauses in which attention is called to the danger to life and property incident to the use of explosives, in the operation and management of moving-picture machines, by careless and incompetent operators and to the necessity for the enactment of a law "by which none but persons who are skilled in the avocation of operating moving-picture machines or electrical project ing apparatus should be allowed to pursue that calling and

to that end a board of examining moving-picture machine operators should be created, whose duty it shall be to examine moving-picture machine operators desiring to follow that trade, and give such as may possess the proper requisites a proper certificate of proficiency."

Thereafter follow the seven sections of the act.

The first section is the enacting clause.

The second section defines the meaning of the term "Moving-Picture Machine."

The third section provides that the Governor "shall biennially appoint in and for Baltimore City three persons, one from the Board of Fire Underwriters' Association, one master electrician to represent the Building Inspector's office of the City of Baltimore, and one moving-picture machine operator, all of whom have had not less than five years' experience at the business and who have resided in Baltimore City, State of Maryland, for a period of not less than two years next preceding their appointment, who shall be known as the Board of Examining Moving-Picture Machine Operators.

Section 4 provides that "all persons who at the time of the enactment of this act are engaged in the business of a 'Moving-Picture Machine Operator' in the City of Baltimore, as described in section 2 of this act, shall within sixty days after the first day of May, 1910, comply with all the provisions of this act; otherwise they shall be guilty of a misdemeanor, and, upon conviction before a justice of the peace or a police justice, be fined a sum not less than ten dollars, nor more than fifty dollars, for each day or fraction thereof that they shall pursue the business of 'Moving-Picture Machine Operators' in the City of Baltimore, and, if said fine is not paid, he shall be subject to imprisonment for ninety days, or both, at the discretion of the judge."

By section 5 it is provided that: "If any such person desires to engage or continue in said business of 'Moving-Picture Machine Operator' after the passage of this act he shall apply to the board provided for in section 3 of this act

for a license and submit to an examination as to his qualifi-
cation before said board; and * * * if the said board shall
find, after due examination, that the said applicant for a
license possesses a reasonable knowledge of the 'Moving-
Picture Machine Operator' business and electricity, then the
said board shall, upon the payment of the fee herein pro-
vided for, issue to said applicant a license for a term of not
more than one year, and shall keep a record of all licenses
so issued; and no person shall be granted a license who has
not reached the age of 21 years and makes oath to such fact,
and has served at least one year with a licensed moving-pic-
ture machine operator in the business; * * * No person
granted a license under the provisions of this act, shall oper-
ate a moving-picture machine or electrical projecting appara-
tus after the expiration of said license or after said license
shall have been suspended or revoked as herein provided,
unless the said license or renewal of same shall have been
received as herein provided." This action also names an
original as well as the renewal fee to be paid for licenses so
granted.

Section 6 vests in the Board of Examining Moving-Pic-
ture Operators the power to suspend or revoke the license of
any operator who is negligent in the operation of his machine
or who operates it in a manner dangerous to the safety of
life or property, but this power is to be˙ exercised only after
full opportunity is afforded the party charged to be present
in person, or by counsel, and make any defense he may have,
and then only subject to the restriction and limitation therein
named.

Section 7 states the amount to be paid to the board of
examiners for their services and directs that it together with
certain expenses therein named be paid out of the funds
received from the issuance of licenses, and further directing
that the surplus, if any, from such source be paid over to the
State Treasurer. It also provides for the times of meeting
of said board and the notice to be given by them of such
meeting.

Taking up the objections urged against the validity of this statute, which the defendant is here charged with having violated, we will first consider the objection that it contravenes the fourteenth amendment to the Federal Constitution, and the twenty-third article of the Bill of Rights of this State, both of which declare that no person shall be deprived of his life, liberty or property without due process of law. These constitutional safeguards have been so fully considered and discussed not only by the Supreme Court of the United States, but by this Court as well, that the proper construction to be placed thereon when attempted to be applied in cases of this character, seems to be well settled and established. *Dent* v. *W. Virginia,* 129 U. S. 114; *Barbier* v. *Connolly,* 113 U. S. 27; *Mugler* v. *Kansas,* 123 U. S. 623; *Soon Hing* v. *Crowley,* 113 U. S. 703; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Singer* v. *State,* 72 Md. 464; *State* v. *Broadbelt,* 89 Md. 565; *Scholle* v. *State,* 90 Md. 729; *State* v. *Hyman,* 98 Md. 596; *Watson* v. *State,* 105 Md. 650.

It is plain that the act in question was passed for the purpose of protecting the public from the consequent injury and loss to life and property resulting from the operation of moving-picture machines by incompetent persons.

In the case of *Singer* v. *State, supra,* similar requirements and restrictions were by statute imposed upon plumbers of Baltimore City; there the Court said: "As to the common and ordinary occupation of life, little or no legislation may be necessary; but if the occupation or calling be of such a character as to require a special course of study, or training, or experience, to qualify one to pursue such occupation or calling with *safety* to the public interests, no one questions the power of the Legislature to impose such restraints, and prescribe such requirements as it may deem proper for the protection of the public against the evils resulting from incapacity and ignorance. And neither the Fourteenth Amendment of the Federal Constitution, nor Article 23 of the Bill of Rights of the Constitution of this

State, was designed to limit or restrain the exercise of this power. * * * We all know that in a large city like Baltimore, with its extensive system of drainage and sewerage, the public health largely depends upon the proper and efficient manner in which the plumbing work is executed. And this being so, the Legislature not only has the power, but it is eminently wise and proper that it should provide some mode by which the qualification of persons engaged in that business shall be determined. Such an act is but the ordinary exercise of the police power of the State, and does not violate in any sense the constitutional rights of the traverser."

The danger to life and property incident to the use of moving-picture machines, when operated by incompetent persons, is known to all. The films used in connection with the machine are highly ·explosive and dangerous in their character and if not properly managed and cared for are liable to explode.

In large cities, compactly built, like Baltimore, there exist possibilities of immense loss of property by fire as was shown by the great fire of 1904, which swept the business section of the city and destroyed property worth many millions of dollars. Moreover, in large cities moving-picture machines are usually operated in large, crowded rooms or halls filled with a constantly changing assemblage, largely composed of women and children, and where in the event of explosion or fire, excitement and panic usually follow, resulting in great loss of life. Therefore every reasonable and proper precaution and safeguard should be taken to prevent or lessen the possibilities of fires so destructive and disastrious in their consequences. It was to prevent or lessen explosions and fires and to avoid the consequences mentioned that this act was passed, providing a mode by which the qualification of moving-picture machine operators, operating machines in the City of Baltimore, shall be determined. The act was to protect the people of Baltimore City against the consequences resulting from the work of incom-

petent moving-picture machine operators and was passed in the exercise of the police power of the State, and does not in our opinion violate either the Federal or State Constitution. *Singer* v. *State, supra; State* v. *Broadbelt, supra.*

It is contended, however, by the relator, that the act complained of, as construed by him, applies only to those persons who were at the time of the passage of the act engaged in the business of moving-picture machine operators of Baltimore City, and not to those who were not at the time of its passage engaged in said business, but who have since become engaged therein, or who may now or hereafter wish to engage in said business; and by reason of this alleged discrimination between the classes mentioned, which classification, he alleges is unreasonable and arbitrary, the act is in violation of both the Federal Constitution and the Bill of Rights of this State.

We can not adopt the contentions of the relator for in our opinion, he improperly construes the statute, in holding that it does not apply to both classes of persons mentioned by him.

It is true that section 4 of the act applies only to those persons who were engaged in the business of moving-picture machine operators at the time of its enactment, and by its provisions they were given sixty days after the 1st day of May, 1910 (from and after which date the statute became effective), within which to procure the license required by the succeeding section of the act. These persons were permitted to continue in said business, without violating the statute, if they at any time before the expiration of the said sixty days procured such license. It was only upon their failure to obtain the license within that time that their continuance in business, thereafter, without such license, was made a misdemeanor by the statute, subjecting them, upon conviction, to the payment of a fine of not less than ten dollars nor more than fifty dollars for each day or fraction thereof that they thereafter pursued said business.

Before a license could be procured, it was made necessary by the statute, that the applicant should submit to an examination to be made by the board of examiners. The applicant, therefore, was subject to all the necessary delays inci-·dent to such examination, before a license could be obtained by him, if successful in his examination. Thus a provision such as is found in section 4 of this act would seem to be necessary, for without it, places of amusement, where moving-picture machines were operated at the time of the enactment of the statute would have to be closed immediately upon the act becoming effective, and before a license could be procured under the act. It was to prevent this, no doubt, that this provision was inserted in the statute and thus it had application only to those persons who were in the business at the time of the enactment of the statute. But as we construe the statute, section 5 applies to both classes, that is, to those that were in the business at the time of its enactment as well as to those not at that time in business, but who thereafter wished to engage therein.

Section 5 provides that "If any such person desires to *engage* or continue in said busines of 'Moving-Picture Ma-·chine Operator' after the passage of this act he shall apply to the board provided for in section 3 of this act for a license and submit to an examination as to his qualification before said board," etc. The relator in construing the language of this section contends that by *"such person"* is meant such persons only as are included within the provisions of the immediately preceding section of the act, or section 4, and as that section applies only to those persons who were in business at the time of the enactment of the statute, this section likewise applies only to that class of persons and not to those who should thereafter desire to engage in said business and who were not in such business at the time of the enactment of the statute. This we think is not a proper construction of this section of the act.

The preamble or whereas clauses of the act point out the danger to life and property resulting from the use of mov-

ing-picture machines when operated by careless and incompetent persons and then declares as we have said before "that a law (should) be enacted by which *none* but persons who are skilled in the avocation of operating moving-picture machines or electrical projecting apparatus should be allowed to pursue that calling and to that end a board of examining moving-picture machine operators should be created, whose duty it shall be to *examine moving-picture machine operators desiring to follow that trade,* and give such as may possess proper requisites a proper certificate of proficiency." From this language it is shown that all classes of moving-picture machine operators were intended to be included within the provisions of the act. *"None* but persons skilled in the avocation" were, by it, permitted to pursue that calling; and all operators are required to submit to the examination provided for by this statute and to obtain a license before engaging or continuing in such avocation. Moreover, the language is "if any such person desire to *engage* or *continue* in said business" he shall apply for license as the statute directs. It will thus be seen that it embraces within its provisions, not only those that desire to *continue* in the business, but includes as well those who desire to *engage* in such business. In our opinion this language is sufficiently comprehensive to include all classes of moving-picture machine operators and is not confined to that class of operators who were in business at the time of the enactment of the statute, as claimed by the relator.

It is also urged against the statute that its title is insufficient because (1) it embraces more than one subject and (2) that the subject matter of the act is not sufficiently described in the title. We have already in this opinion set out the title in full and have given at least the substance of the provisions of the statute, and, therefore, it is unnecessary for us to do so again. The requirement of the Constitution (Art. III, sec. 29) in respect to this objection is that "Every law enacted by the General Assembly of Maryland shall embrace but one subject, and that shall be described in

the title." In *Baltimore* v. *Reitz,* 50 Md. 574, this Court in construing this section of the Constitution, said: "If several sections of the law refer to and are *germane* to the same subject-matter, which is described in its title, it is considered as embracing but a single subject, and as satisfying the requirements of the Constitution in this respect. While the title must indicate the subject of the act, it need not give an abstract of its contents, nor need it mention the means and method by which the general purpose is to be accomplished." Applying this rule of construction to the title of the act here involved we do not find it defective for either of the reasons urged against it.

As to the third objection made against the act, which objection is not referred to or mentioned in the brief of the appellant we think it unnecessary to do more than refer to the case of *Downs* v. *Swann,* 111 Md. 53, and the cases there cited. In that case the Court, speaking through the late JUDGE SCHMUCKER, said: "It has also been settled by numerous decisions that the State may delegate the police power to subordinate boards and commissions, and that the reasonable and just exercise by them of the delegated power will be upheld." *Reetz* v. *Michigan,* 188 U. S. 505; *Singer* v. *State,* 72 Md. 464; *State* v. *Broadbelt,* 89 Md. 565; *State* v. *Knowles,* 90 Md. 646; *Scholle* v. *State,* 90 Md. 729; *Watson* v. *State,* 105 Md. 650.

We have now reached the fourth and last objection urged against the act, which is, that it vests summary jurisdiction in the police magistrates and justices of the peace of Baltimore City to try and punish violations under it, without providing for trial by jury or for an appeal to a higher Court. We find this subject fully discussed in the case of *State* v. *Glenn,* 54 Md. 572. In that case the defendant was, by a justice of the peace of this State, convicted upon the charge of being a vagrant, habitually disorderly person and was by the justice sentenced to the Maryland House of Correction, for the period of six months. The defendant was afterwards discharged from the institution, to which he had been sen-

tenced, under a writ of *habeas corpus*, the judge discharg-
ing her holding that the jurisdiction under which she had
been convicted was unconstitutionally conferred, and there-
fore the conviction was a nullity. When the case reached
this Court one of the question presented was whether the
Legislature could confer upon the justices of the peace of
this State summary jurisdiction to try and convict a party
of an offence, such as that with which the prisoner was
charged. JUDGE ALVEY in discussing the question thus pre-
sented, after referring to similar statutes in England by
which summary jurisdiction was given to justices of peace
to try like offences, and where the punishment prescribed by
such statute was imprisonment and hard labor, said: "That
the exercise of the summary jurisdiction, therefor, is not, in
England at least, regarded as being in violation of the funda-
mental guarantees of the rights and liberties of the people;
and the personal liberty of the subject at this day is as well
and jealously protected in England as in any other country,
where the principles of *Magna Charta* and of the common
law are enforced." The judge then, after naming a number
of the English statutes that conferred summary jurisdic-
tion upon justices of the peace, stated that "these statutes
have been in force here from our earliest history and are
still in force, and we are not aware that it has even been
supposed that these provisions were in any way restrained
or controlled by the declaratory provisions in the Declara-
tion of Rights. There are great many statutes upon the
statute books, relating to a great variety of subjects prescrib-
ing fines, penalties and forfeitures, as punishment, for doing
or omitting to do certain things; and by many of those
statutes jurisdiction has been given to justices of the peace,
from whose judgments no appeal was provided for until
within a comparatively recent period." The opinion also
refers to the Act of 1777, Chapter 6, known as the Fines and
Penalties Act which was passed at the first session of the
State Legislature after the adoption of the Declaration of
Rights and the Constitution of 1776; and also the Statutes

of 1781 and 1785, in regard to bastardy, and in which reference it says of them that, "These statutes have all co-existed with the several Constitutions of the State; and in various cases that have occurred, involving these provisions, we have never heard it contended that the proceedings thereby authorized were not constitutional, because the trial by jury was not provided for, either in the first instance or by appeal."

In *State* v. *Ward,* 95 Md. 121, the defendant was convicted before a justice of the peace for violation of certain sections of the Public Local Laws of Anne Arundel County, amended by Chapter 582 of the Acts of 1892, which regulated the shooting of wild fowl in said county. The statute provided for the obtaining of licenses to place blinds and shoot therefrom; and also made it unlawful to establish blinds nearer to other blinds than the distance therein given, and upon conviction before a justice of the peace for the violation of any of the aforegoing provisions, the statute imposed a fine of not less than five dollars nor more than twenty-five dollars for each offence, with the additional fine upon the owner of the blind placed nearer. to the already established blind than the distance allowed in the statute, the sum of five dollars for each week such blind remained, after due notice given to such owner by the owner of the previously established blind to remove the same. No right of appeal was given by the statute and this Court in that case said "where the jurisdiction has been conferred by special statute the alleged offender has no right to call for a jury, unless there is something in the act directing to the contrary. There being nothing in the act that confers upon the party charged, the right to demand of the justice a jury trial, it follows that the justice has jurisdiction to hear and finally determine the charge set out in the warrant."

Upon the authority of the cases cited we are unable to find that the jurisdiction conferred upon justices of the peace by the statute here questioned violates the constitutional provisions mentioned by the relator in this, his fourth contention.

The justices of the peace before whom the relator was carried had jurisdiction to finally hear and determine the charge under which he was arrested, but we do not think the relator was entitled to a jury trial as prayed by him. Therefore the learned Court below in our opinion erred in holding that he was so entitled and in remanding the case to the justice with directions to him that he "grant unto the petitioner his prayer for a trial by jury."

The counsel of the relator have urged other objections to the validity of this statute and have pointed out a number of alleged defects and omissions therein, all of which we have carefully considered, but we do not think they go to the extent of rendering the statute void; although they show a great want of thought and skill in the drafting of the bill. We, therefore, suggest, inasmuch as the legislature is now in session, that the statute be amended by supplying the omissions and by removing therefrom the uncertain features or provisions of the act, so that it may be more easily understood and enforced.

As the order of the Court below not only quashes the writ of *certiorari* and remands the case to the justice of the peace, but also *directs him to grant unto the petitioner his prayer for a trial by jury,* we will affirm in part and reverse in part the order of the lower Court and remand the case.

> *Order affirmed in part and reversed in part and case remanded. The appellant, Frank M. Ebert, to pay the costs above and below.*