## JOHN A. WATSON *vs.* THE STATE OF MARYLAND.

*Physicians—Indictment for Practicing Medicine Without Being Regis-*
*tered—Validity of Statute Requiring Only Some Physicians to be*
*Licensed—Plea of Autrefois Acquit.*

The offense of practising medicine without having been registered is created wholly by Code, Art. 43, sec. 99, and in an indictment for that offense it is not necessary to allege that a notice had been sent to the defendant by the Secretary of the Board of Medical Examiners, as is required by Code, Art. 43, sec. 80.

Code, Art. 43, sec. 83, requires all persons who shall commence to practice medicine after April 1st, 1902, or who were then practicing, to obtain a license, upon complying with certain conditions, from the Board of Medical Examiners, but the statute excepts from its operation physicians who were practicing medicine prior to 1898, and who had continued to practice and hospital physicians.    *Held*, that this classification of the physicians who are required to obtain licenses is not arbitrary but is reasonable and therefore is not in conflict with the Fourteenth Amendment of the Constitution of the U. S.

An indictment for unlawfully practicing medicine without being registered charged that the offense was committed on November 6th, 1906. The defendant pleaded *autrefois acquit*, in that at a previous term of Court he had been indicted for practicing medicine without being registered by an indictment charging the date of the offense to be October 1st, 1905, and the plea averred that the defendant was the same person who was the defendant in the former case and the offense therein charged the same and that the only question at that trial was whether the defendant could lawfully practice medicine without being registered, and that upon trial by a jury he was found not guilty. *Held,* that this plea is bad upon demurrer since there is nothing to show what particular facts found by the jury in the former case led to the defendant's acquittal; and it does not appear from the plea either that the specific act charged in the former case was the same act charged in this indictment, or that the former jury found that the defendant had been duly registered as a practitioner in October, 1905.

*Decided April 24th, 1907.*

Appeal from the Circuit Court for Allegany County.

The cause was argued before Briscoe, Boyd, Pearce, Schmucker, Burke and Rogers, JJ.

*Ferdinand Williams* and *Charles G. Watson*, for the appellant.

*William S. Bryan, Jr., Attorney-General* (with whom was *A. A. Wilson, State's Attorney for Allegany County*, on the brief), for the appellee.

Pearce, J., delivered the opinion of the Court.

The appellant was indicted in the Circuit Court for Allegany County under section 99 of Article 43 of the Code of 1904 for practising medicine and surgery in this State without being registered as a practitioner of medicine as required by sections 83 and 89 of that Article.

There are three counts in the indictment. The first count charges that the defendant, on November 6th, 1906, "unlawfully practised medicine and surgery in Allegany County, without being then and there duly registered as a physician or surgeon in the Registry of Physicians and Surgeons."

The second count charges the commission of the offense on November 6th, 1906 "by then and there administering medical treatment to a person whose name is to the jurors unknown, without being then and there registered as a physician."

The third count charges the commission of the offense on November 6th, 1906, "by then and there administering medical treatment to one Michael McDonald, without being then and there registered as a physician."

The defendant demurred to the indictment and the demurrer was overruled. It was contended that the indictment was insufficient for the following reason. Section 80 of Article 43 provides that the Board of Medical Examiners at its meeting on June 1st in each year shall appoint a Secretary-Treasurer whose duty it shall be within sixty days thereafter, upon receiving from the clerk of the Circuit Court of Baltimore City, and the clerk of the Circuit Court for each county in the State a list of all who have been legally registered in such Court, to send to all physicians then practising in the State without having been legally registered, a printed notice of the provisions of that Article relating to the duty of the Police Commissioners in Baltimore City and the Sheriffs of the several counties, which requires them to see that all practising physicians in the State shall be legally registered, and to report to the State's Attorney of the city or county all cases of violation of that subtitle of Article 43.

The appellant's contention is that to make this indictment good under this law it should state that this notice had been sent to the accused.

If this requirement as to the sending of notice were incorporated in the clause which enacts the offense this might be a matter for consideration, but no offense is created by section 80. It is only by section 99 that practising medicine or surgery without being registered, is made a misdemeanor and punishable as such. Even if this requirement could be treated as an exception is treated, it would not be necessary to aver the sending of the notice because it is not so incorporated in the enacting clause of the statute that the one cannot be read

without the other, and it is only in such cases that the indictment must negative an exception. *Stearns* v. *State*, 81 Md. 344; *Kiefer* v. *State*, 87 Md. 568; *State* v. *Knowles*, 90 Md. 658. Where the exception is contained in a subsequent or separate clause or section, it is matter of defence to be pleaded by the accused. And even if pleaded in this case, it could not avail, because it is clear from all the provisions of Article 43 that the receipt of such notice is not necessary to constitute the offense of practising medicine without being registered. The offense is created solely by section 99 in broad and general language without exception, qualification, or condition of any sort.

It was also contended that the provisions of section 83 of Article 43 are unconstitutional in that they make an unreasonable and arbitrary class distinction or discrimination. That section requires that "all persons, (except physicians who were practising medicine in this State prior to the first day of January 1898, who are now practising medicine or surgery, and can prove by affidavit that within one year of said date said physician had treated in his professional capacity, at least twelve persons) who shall commence the practice of medicine or surgery in any of their branches after the eleventh day of April, 1902, shall make a written application for license to the President of either Board of Medical Examiners which said applicant may elect, accompanied by satisfactory proof that the applicant is more than twenty-one years of age, is of good moral character, has obtained a competent common school education, and has either received a diploma conferring the degree of doctor of medicine from some legally incorporated medical college in the United States, or a diploma, or license, conferring the full right to practice all the branches of medicine and surgery in some foreign country; said diploma, if from a college in the United States, must have been conferred by a legally incorporated college requiring a four years standard of education as defined by the American Medical College Association, or the Inter-collegiate Committee of the American Institute of Homeopathy respectively."

That section of the Code was section 43 of chapter 612 of

1902, which chapter repealed and re-enacted with amendments certain sections of Article 43 of the Code including sec. 43 as enacted by chapter 296 of 1892, which latter Act in turn repealed and re-enacted with amendments almost all the sections of Article 43 of the Code of 1888, including section 43 under the subtitle "Practitioners of Medicine," as enacted by Chapter 429 of 1888, codified in the Code of 1888. Under the Act of 1888, physicians who had been continuously practising medicine within this State for ten years previous to the passage of that Act were not required to obtain a certifiicate of qualification from the State Board of Health, as all other practitoners of medicine were thereby required to do. The Act of 1892, as was observed in *Manger* v. *Board of Examiners* 90 Md. 667, swept away the whole scheme devised by the Act of 1888, and was specifically made applicable to persons *not then* practising medicine, but who should thereafter *begin to practice.* Under that Act, and down to the passage of the Act of 1902, all persons practising medicine and surgery at the date of the passage of the Act of 1892 were free to continue to practice without license or other evidence of qualification. Here was a discrimination both broad and emphatic, the evident design of which was to afford protection to the public without interference with established and recognized practitioners. It may be reasonably inferred that after ten years experience under that Act, the Legislature deemed that system too liberal since the Act of 1902, as incorporated in the Code of 1904, provides that "all persons *now* practising medicine and surgery, or who shall hereafter begin to practice medicine or surgery in any of their departments, except dentistry, in the State of Maryland, shall possess the qualifications required by this subtitle."

We have already transcribed herein, the provision of sec. 83, under which physicians who were practising in this State prior to January 1st, 1898, and who were practising at the passage of that Act, and could prove by affidavit that within one year from that date that they had treated in a professional capacity at least twelve persons should be exempt from the requirement

to obtain a license, and it is this exemption which is assailed as an unreasonable and arbitrary discrimination or classification forbidden by the fourteenth amendment to the Constitution of the United States.   In *State* v. *Broadbelt*, 89 Md. 579, this Court said, quoting JUDGE COOLEY, "The guaranty of equal protection is not to be understood, however, as requiring that every person in the land shall possess the same rights and privileges as every other person.   The amendment contemplates classes of persons, and the protection given by the law is to be deemed equal, if all persons in the same class are treated alike under like circumstances and conditions, both as to privileges conferred and liabilities imposed.   The classification must be based on reasonable grounds.   It cannot be a mere arbitrary selection."

It must be conceded upon all the authorities, and it is conceded by the appellant, that if the classification is reasonable and bears any proper relation to the object sought to be accomplished, that object being in itself a lawful and proper purpose, it is not forbidden by the Fourteenth Amendment. It is conceded that the States may in the exercise of the police powers, pass laws for the protection of the health and safety of the public, and this law was passed under that power. Now the object sought to be accomplished by this law is to protect the public against incompetent and ignorant practitioners of medicine, while at the same time protecting actual practitioners of medicine against arbitrary and unreasonable exclusion from the practice of their profession.   The law deals with that class of the people who have adopted and are engaged in the practice of the profession of medicine, and who are dependent upon it for the support of themselves and their families, and with that other and larger class to whom competent medical practitioners are essential for the preservation of their health. These two classes are recognized classes, and each is entitled to consideration in framing the law.   In *Dent* v. *West Virginia*, 129 U. S. 121, the Supreme Court of the United States, speaking of the right of every citizen to follow any lawful business or profession he may choose, subject only to such

lawful restrictions as may be imposed upon such right, said, "The interest, or, as it is sometimes termed, the estate acquired in their vocations, that is the right to continue their prosecution, is often of great value to the possessor, and can not be arbitrarily taken from them any more than their real and personal property can be thus taken." It was the recognition of this principle which led to the provision here assailed. Continuous acceptable practice in the community in which one lives is *one* of the legitimate tests or evidences of qualification; not of *uniform* qualifications of the *highest attainable standard*, such as can only be ascertained by a thorough examination by competent examiners but of such *reasonable* qualification as may justify the continuance, without examination of practice approved by the limited community in which the practitioner had his field. Without such an exemption from the rigid examination which conforms to the high standard of the principal medical colleges of this day, many worthy men established in character and reputation, might be prohibited from practice, and this would be especially true among the poorer classes of people who cannot afford to employ physicians of the highest grade, but whose self respect and independence will not permit them to seek the charity so generously bestowed upon the poor by the medical profession.

In *Magoun* v. *Illinois Trust Co.*, 170 U. S. 294, the Supreme Court speaking of the Fourteeneh Amendment which prohibits the denial to any citizen of the equal protection of the laws, said, "This rule prescribes no rigid equality, and permits to the wisdom and discretion of the Legislature a wide latitude so far as the interference of this Court is concerned, * * * equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relations. * * * Hardships, impolicy or injustice of State laws is not necessarily an objection to their constitutional validity."

In *Dent* v. *West Virginia*, the law which was upheld, exempted from examination and license all physicians who had practiced medicine in that State continuously for ten years.

The period of practice required under section 83 of Art. 43, at the time of its passage was a little more than four years, and that law has now been in force five years.   If it was within the discretion of the Legislature to fix a ten-year period, it was equally within their discretion to fix a four year period, since the Supreme Court has said the Legislature has a wide latitude in dealing with such classifications.   To justify the striking down of such a classification it must, as was said in *Luman* v. *Hitchens Bros. Co.*, 90 Md. 27, be "obviously arbitrary," and must be shown "not to rest upon some difference which bears a reasonable and just relation to the act—the thing—in respect to which the classification is proposed." This has not been shown in the argument or in the brief of the appellant.   On the contrary, re-examination of the authorities and a careful reading of the briefs, convinces us that the law is not open to this objection. In *Scholle* v. *State*, 90 Md. 740, where the Act of 1892 was drawn in question as it related to the right of practising medicine in this State without registration, the Court said, "Where there are differences as to conditions and situations, by which it becomes reasonable that greater precautions are required in some cases than in others, classes may be formed by which certificates can be granted to some without examination, and by which others may be exempted altogether from the burden of registration. These classes must be created upon considerations only that are promotive of the public interests, and if they are so created, they do not constitute an unlawful discrimination and do not impair the equal right which all can claim in the enforcement of the laws."

This law was attacked under the demurrer to the indictment upon the further ground that sec. 101 provides that nothing contained in said sub-title should be construed to apply to the following persons: 1st.  Those rendering gratuitous services; 2nd.  Resident or assistant resident physicians or students at hospitals in the discharge of their hospital or dispensary duties, or in the office of physicians; 3rd.  Physicians or surgeons from another State or territory, when in actual

consultation with a legal practitioner in this State; 4th. To commissioned surgeons of the United States Army or Navy, or Marine Hospital service; 5th. To Chiropodists; 6th. To midwives; 7th. To masseurs or other manual manipulators who use no other means; 8th. To physicians or surgeons residing on the borders of neighboring State, and duly authorized to practice under its laws, and whose practice extends into the limits of the State, but not so as to permit them to maintain an office in this State.

The 3rd and 4th of the above classes were considered in *Scholl* v. *State, supra,* and the classification was sustained as just and reasonable, upon grounds so obviously sound that we shall content ourselves with referring to them without repeating them. It was also held in that case that "persons temporarily practising under the supervision of an actual medical preceptor," who were by the Act of 1892 exempted from the provisions of that Act, constituted a reasonable and proper class for such exemption. That class is the equivalent of those embraced in class 2 above, and described as students in the discharge of their duties in the office of physicians, which would confine them to the supervision of those physicians in whose offices they were. The reasonableness of the other exceptions made in section 101, when considered in the light of the reasons assigned in *Scholle* v. *State,* for the judgment in that case are so obvious that we shall not extend this opinion by considering them in detail. It should be sufficient to say that they all come in our judgment within the wisdom and discretion of the Legislature, which the Supreme Court has said in *Magoun* v. *Illinois Trust Co.,* 170 U. S. *supra,* has so "wide a latitude," and that this case falls within the language of the Court in the recent case of *Dobbins* v. *Los Angeles,* 195 U. S. 235, in which it was said that "every intendment is to be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health and safety and that it is not the province of the Courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local

rights and the health and welfare of the people of the community."

The demurrer to the indictment being overruled the defendant filed two pleas of *Autre fois acquit.* The first plea averred that the defendant was indicted at the January Term, 1906, of the Circuit Court for Allegany County for unlawfully practising medicine in Allegany County without being registered as a physician and then proceeded to set out the indictment in full which contained three counts. The first count charged the offense in the exact language of the first count of the present indictment except that the date of the offense was charged to be October 1st, 1905, instead of November 6th, 1906, as charged in this case. The second and third counts in the former indictment were in the exact language of the second and third counts of the present indictment, except that the second count charged the offense to have been committed on November 6th, 1906, instead of October 1st, 1905, and by administering medical treatment to one John P. Moody and to a person whose name was to the jurors unknown, and the third count charged the offense to have been committed on November 6th, 1906, instead of October 1st, 1905, and by administering medical treatment to one Marie Martin.

The plea then averred "that he and the said John A. Watson, defendant in the above recited indictment, are one and the same person and the offense therein set out, and that now charged, are one and the same offense, and that at said trial the only question was whether the defendant could lawfully practice medicine in Allegany County without being registered as a physician and surgeon; that he pleaded not guilty to said indictment and upon trial by a jury was found not guilty."

The second plea was a repetition of the first except the closing clauses which are as follows, "That he and the said John A. Watson, defendant in the above recited indictment are one and the same person, and that the offense therein set out, and that now charged are one and the same offense. Defendant says that at said trial it was proved without denial

that he, the said defendant practised medicine in Allegany County at the time alleged in said indictment and that at said trial the only question at issue was, whether defendant was entitled and qualified (under Art. 43 of the Code subtitle Practice of Medicine) to practice medicine in Allegany County and that by the verdict and judgment in said case it was adjudged that the defendant was so entitled and qualified; and defendant says that the qualification to practice medicine in said county under said law, is now and since said trial has been identically the same as it was at the time of said indictment and trial and that at the time of the alleged unlawful acts set forth in said indictment."

The State demurred to these pleas and the demurrer was sustained. The defendant then pleaded not guilty and a verdict of guilty was rendered on the first count, with which alone therefore we are now concerned.

If we were required to consider the second and third counts, it is clear that as to them both pleas would necessarily be held bad, provided the defendant was not in fact found by the verdict in the former case to have been duly registered on October 1st, 1905, because in all such cases both the *crime defined in the Statute*, and the *act* by which the crime is committed, must be identical; 17th *Amer. & Eng. Enc. of Law*, 2nd edition, p. 597; or as stated in *U. S.* v. *Randenbush*, 8 Peters, 288, "The crime must be the same in law and in fact." If therefore the defendant has *never* been duly registered as a physician, an acquittal for practising medicine on October 1st, 1905, could not be a bar to a prosecution for practising medicine on November 6th, 1906, because the facts required to support the second indictment would not have been sufficient nor even admissible, to procure a conviction under the first indictment. *People* v. *Gault*, 104 Mich. 575; *Freeman* v. *State*, 119 Ind. 501; *Gormley* v. *State*, 37 Ohio 120.

But if in fact the defendant was duly registered as a physician on October 1st, 1905, or if it appears by the record set out in the pleas of former acquittal, that the jury in that case did, by their verdict, find that he was so registered, then such

acquittal would be a good plea in bar to any subsequent indictment, because, so long as the statute stands unrepealed, registration would entitle the defendant to practice medicine in Maryland. It becomes necessary therefore to examine these pleas carefully, and the effect of the demurrer thereto, in order to determine whether that issue was raised and determined in the former case, and what is admitted by the demurrer to these pleas.

The defendant contends that the facts alleged in the pleas should have gone to the jury, and they should have found whether or not the offense was being again brought before a jury.

We think it is clear that the first plea was defective. The necessary averment to the personal identity is made, but the identity of offense is not sufficiently averred, because it does not appear therefrom that the *act* by which the offense charged in the former indictment, was identical with the act now charged, nor does it even attempt to aver that by the former verdict the defendant was found to have been duly registered as a practitioner of medicine. Conceding everything alleged in that plea, it does not appear either that the specific *act* charged in the former case was the same act here charged nor does it appear that the former jury found the defendant to have been duly registered as a physician on October 1st, 1905, which registration *so found*, would be a protection so long as the law was unrepealed. Nor do we think the second plea can be held good. The averment that "it was proved without denial that he practiced medicine in Allegany County at the time alleged in the indictment," is not sufficient. It does not follow that the jury believed the proof. He may have been acquitted because the jury did not find that he practised medicine at all, or if he did, that he did not charge for his services, in either of which cases there could have been no conviction. Nor is the mere allegation of the pleader that by the verdict and judgment in the former case it was adjudged that he was registered as a physician, sufficient to sustain the plea, unless that averment is affirmatively supported by the record set out

in the plea; and the demurrer must be taken as admitting only the averments of fact fairly deducible from the record relied on and set out in the plea, but can not be taken as admitting the legal conclusion sought to be drawn from the record by the mere averment of the defendant in the plea. All that this record shows, is that the defendant was acquitted of all the charges in the former indictment, but it is silent as to the particular fact or facts found which led to the acquittal. As was said by JUDGE GRASON in *Bell* v. *The State*, 58 Md. 117, "An acquittal of a party does not ascertain any precise facts. It may have resulted from an insufficiency of evidence as to some particular fact where several facts are necessary ingredients of the crime. 2 *Cowen's Phill. Ev.*, 55–56; *Roscoe's Cr. Ev.*, 194."

In *Hite* v. *The State*, 9 Yerger, 357, the Court said, "The plea of *autre fois acquit* is of a mixed nature, and consists partly of matters of record and partly of matters of fact. The matter of record is the former indictment and acquittal. *The matter of fact is the identity of person and offense.* In all cases where the plea consists of matter of record and matter of fact, the issue made thereon is to the country, but this does not take from the Court the right it possesses of determining exclusively, what is of record and what is not."

In that case instead of demurring to the plea the State filed a replication of *nul tiel record* concluding with a verification, and the Court without the intervention of a jury decided the issue upon the replication against the prisoner on the ground that the record which was copied *verbatim* into the plea did not support it. The Court held that the better practice would have been instead of replying *nul tiel record* to have filed a plea of *autre fois acquit* to which a demurrer could be filed.

And in 9 *Enc. Pl. & Pr.*, 640, it is said, "when the plea is on its face bad in law, it is demurrable and may be decided by the Court without reference to the jury."

There was no error in the ruling on these pleas, and the judgment must therefore be affirmed.

*Judgment affirmed, appellant to pay the costs.*