# ROBERT R. KEININGHAM

*vs.*

## JOHN D. BLAKE, Local Registrar of Vital Statistics.

*Osteopathic Practitioners—Filing of Birth and Death Certifi-
cates—Constitutionality of Statute.*

Code, Vol. 3, Art. 43, Sec. 301, expressly providing that
neither birth nor death certificates shall be accepted from osteo-
pathic practitioners, is not invalid as involving a denial to such
practitioners of the equal protection of the laws, within the
Fourteenth Amendment of the Federal Constitution, and is a
proper exercise of the police power of the State.      pp. 322, 324

The Legislature has power to determine the methods to be
employed in collecting vital statistics, and its designation of
medical and surgical practitioners as agencies for this pur-
pose, and exclusion of osteopaths, does not involve such an ob-
vious abuse of its discretion as to call for interference by the
courts.                                           p. 323

The separate classification, for licensing purposes, of prac-
titioners of medicine and surgery, and those practicing by ma-
nipulation only, cannot be held to be unreasonable.      p. 322

*Decided December 9th, 1919.*

The cause was argued before Boyd, C. J., Thomas, Patti-
son, Urner, Stockbridge and Adkins, JJ.

*Philip L. Sykes,* with whom were *Baum & Sykes* on the
brief, for the appellant.

*Roland R. Marchant, City Solicitor,* and *Robert F. Leach,
Jr., Assistant City Solicitor,* for the appellee, submitted the
cause on brief.

Urner, J., delivered the opinion of the Court.

The appellant is duly licensed and registered under the
laws of Maryland for the practice of osteopathy.   In his pend-
ing petition for mandamus he claims the right to be regis-
tered with the Register of Vital Statistics of Baltimore City

as a physician entitled to file certificates of births and deaths notwithstanding the provision of the statute relating to osteopathy, that nothing therein contained shall authorize any State or municipal officer "to accept from any osteopathic practitioner any birth or death certificate." Code, Art. 43, Sec. 301. The question to be determined is whether that provision is constitutional.

The argument on behalf of the appellant was largely directed to the support of the contention that osteopaths are physicians and as such are required and entitled to register with the local Registrar of Vital Statistics, and to furnish him certificates of birth and death, under statutory provisions by which "physicians" are charged with such duties. Code, Art. 43, Secs. 12, 14, 21. The express terms of the statute dispose of this contention. It is not material in this case to inquire whether osteopaths are to be regarded as physicians within the accepted meaning of that term. There are numerous cases dealing with questions as to whether various regulations of the practice of physicians apply to ostepaths. A collection of such cases may be found in a note to *People* v. *Cole* (219 N. Y. 98) in L. R. A. 1917 C. 822. The subject is well discussed and cases are cited in 21 *R. C. L.* 370-1. A very recent case not included in the citations just given is that of *People* v. *Siman*, 278 Ill. 256. The decisions on the subject are mainly based on the definitions or apparent purpose of the particular statutes under consideration. In the Code provisions with which we are here concerned there is no definition of the term "physician," except in so far as may be implied from the requirement that any person desiring to "practice medicine or surgery," in this State, "shall be duly licensed as a physician or surgeon." Code, Art. 43, Sec. 122. But osteopathy is defined to be "a system of treatment based on the theory that diseases are chiefly due to deranged mechanism of the bones, nerves, blood vessels, and other tissues and can be remedied by manipulations of these parts," and it is provided that the license issued to a practitioner of osteo-

pathy "shall authorize the holder to practice by manipula-
tions only," and that nothing in the Act relating to such
license "shall be construed as affecting the so-called practice
of medicine." Code, Art. 43, Sec. 300. A definite distinc-
tion is thus made between licensed practitioners of osteopathy
and those licensed to practice medicine or surgery. But con-
clusive indication of the legislative intent, upon the subject
of the present inquiry, is given by the section already re-
ferred to, prohibiting the acceptance of birth or death cer-
tificates from "any osteopathic practitioner." The purpose
of the existing law to exclude osteopaths from the classifica-
tion of physicians, so far as the giving of such certificates is
concerned, is too clearly and positively expressed to leave
any room for doubt on that subject.

The vital question in the case is whether the prohibition
against the acceptance of birth or death certificates from
licensed osteopaths is a violation of any of their constitutional
rights. It is contended that this provision is a denial of the
equal protection of the law to those practicing osteopathy,
and is therefore in contravention of the Fourteenth Amend-
ment of the Federal Constitution.

The enactment in question forms part of the Code article
entitled "Health," and its relation to that subject is obvious.
It is therefore within the scope of the police power of the
State, and should be sustained as an exercise of that power
unless the discrimination it makes can be held to be plainly
arbitrary and without any perceptible relation to the objects
sought to be accomplished. All reasonable presumptions
must be made in favor of the validity of the provision. The
judgment of the Legislature that such a regulation is proper
and desirable should be respected and enforced by the courts
if there is any rational theory upon which it can be supported.

The separate classification, for licensing purposes, of prac-
titioners of medicine and surgery and those practicing by
manipulation only cannot be held to be unreasonable. Prac-
titioners of the former class were licensed in this State many
years before such a provision was made as to osteopaths. The

methods of treatment, and the prescribed qualifications, differ
in important particulars for the two classes of practitioners,
and the differences by which they are actually distinguished
suggest an adequate reason for their separate classification by
statute.

Prior to the enactment in 1914 of the provisions relating
to osteopathy, it seems clear that no practitioner of that form
of treatment, unless he was qualified and licensed as a prac-
titioner of medicine and surgery, could have found any basis
for the contention that he was entitled to be registered by the
Registrar of Vital Statistics to furnish the birth and death
certificates for which the pre-existing statutes provided.   It
was certainly competent at that time for the Legislature to
direct that the certificates of birth and death, from which the
vital statistics of the State were to be obtained, should be fur
nished primarily by duly licensed medical practitioners.   It
did in effect so provide, with supplemental directions that if
a death occurs without medical attendance, the certificate
shall be prepared by the Health Officer, or Local Registrar,
and that in the case of a birth when no physician is in attend-
ance, the birth certificate shall be made out by the midwife,
if one is present, otherwise the father, coroner, householder,
keeper of an institution, officer of a ship, or conductor of a
train, in which a birth occurs, is charged with the duty of
reporting the facts to the Local Registrar, who must there-
upon make an investigation and prepare the certificate of
birth in due form.   Midwives are required to be examined,
registered and licensed.   Code, Art. 43, Secs. 69-83.   If the
Legislature had determined not to regulate the practice of
osteopathy, it is clear that the appellant could not have
claimed the right as an unlicensed physician to give the cer-
tificates of birth and death which the statute designs to have
furnished.   Not having been licensed as a practitioner of
medicine or surgery, under the terms of the statute, but hav-
ing procured a license which limits his practice to treatment
by manipulations only, under provisions of law which exclude
him from the class of practitioners from whom birth and

death certificates may be accepted, the question is whether he can justly complain that he has thereby been subjected to an arbitrary and unconstitutional discrimination.

The certificates of birth and death to which the statute refers are required to contain such "items of information as the State Registrar of Vital Statistics shall deem important or necessary," in addition to such facts as the date and place of a birth or death, the name, sex and color of a child reported born, the name, age, color, occupation, condition and birthplace of a person reported to have died, the cause of death, duration of illness, and the name and address of the attending physician. It was the evident theory of the Legislature that some of the information which the law directed, or the State Registrar of Vital Statistics might deem necessary, to be included in the birth or death certificates, could be furnished more satisfactorily by a physician having the qualifications demanded by the statute of practitioners of medicine and surgery than by those who were licensed to practice osteopathy exclusively. As to the real necessity for making such a distinction this Court has no right to decide. The only inquiry we are authorized to make is whether the action of the Legislature in restricting the means and agencies by which vital statistics are to be obtained is clearly unreasonable.

In the case of *Watson* v. *State,* 105 Md. 650, where the decision sustained the validity of an Act which required licenses to be procured by practitioners of medicine or surgery, but which exempted certain classes of physicians and surgeons, and chiropodists, midwives and masseurs, or other "manual manipulators who use no other means," the opinion of the Supreme Court in *Magoun* v. *Illinois Trust Co.,* 170 U. S. 294, discussing the constitutional provision as to the equal protection of the laws, was quoted in part as follows: "This rule prescribes no rigid equality, and permits to the wisdom and discretion of the Legislature a wide latitude so far as the interference of this Court is concerned. * * *

equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relations. * * * Hardships, impolicy or injustice of State laws is not necessarily an objection to their constitutional validity." The decision in *Watson* v. *State* was affirmed by the Supreme Court in 218 U. S. 173. In holding that none of the exemptions complained of rendered the Act invalid the Supreme Court said: "Before a law of this kind can be declared violative of the Fourteenth Amendment as an unreasonable classification of the subjects of such legislation because of the omission of certain classes, the Court must be able to say that there is 'no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched.' Such was the expression of this Court in *Missouri, K. & T. R. Co.* v. *May,* 194 U. S. 269, quoted with approval in *Williams* v. *Arkansas, supra,*" (217 U. S. 79). The selection of the exempted classes was within the legislative power, subject only to the restriction that it be not arbitrary or oppressive, and apply equally to all persons similarly situated."

In our opinion the discrimination we are considering in the present case is not so clearly arbitrary as to justify the Court in declaring it void. It relates solely to the collection of vital statistics. The Legislature has the undoubted right to determine as to the methods to be employed in obtaining such information for the use of the public. Its designation of certain agencies for that purpose, in the statute under consideration, is not such an obvious abuse of its discretion as to authorize the Court to substitute its own for the legislative judgment and to refuse to recognize the provision as a valid enactment.

The order dismissing the petition for mandamus will be affirmed.

*Order affirmed, with costs.*