THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES N. MARI, Appellant.

(Argued November 28, 1932; decided January 10, 1933.)

*Cyril S. Landau* and *George V. Fleckenstein* for appellant. No charge of illegally practicing medicine was substantiated, there being a complete lack of proof to show a holding out by defendant of himself as a physician and a diagnosis as required by the provisions of section 1250, subdivision 7, of the Education Law. (*People* v. *Allcutt*, 117 App. Div. 546; 189 N. Y. 517; *People* v. *Somme*, 120 App. Div. 20; 190 N. Y. 541; *People ex rel. Lederman* v. *Warden of City Prison*, 168 App. Div. 240; *People* v. *Lucas*, 198 N. Y. Supp. 846; *Commonwealth* v. *Zimmerman*, 221 Mass. 184; *People* v. *Cole*, 219 N. Y. 98.) The one act of physiotherapeutic treatment administered by defendant was concededly performed under the supervision and direction of a duly licensed physician in conformity with section 1262 of the Education Law. (*People* v. *Phyfe*, 136 N. Y. 554; *People* v. *Somme*, 121 App. Div. 488; 190 N. Y. 541.)

*John J. Bennett, Jr., Attorney-General* (*Sol Ullman* of counsel), for respondent. Defendant's acts constituted the practice of medicine. (Education Law, §§ 1250, 1251, 1263; *Brown* v. *Shyne*, 242 N. Y. 176; *People* v.

*Lucas,* 198 N. Y. Supp. 846; *State* v. *Bresee,* 137 Iowa, 673; *Bibber* v. *Simpson,* 59 Me. 181; *State* v. *Smith,* 233 Mo. 242; *Collins* v. *Texas,* 223 U. S. 288; *People* v. *Ellis,* 162 App. Div. 288; *People* v. *Antichi,* 233 App. Div. 723; 257 N. Y. 571; *Commonwealth* v. *Zimmerman,* 221 Mass. 184; *State* v. *Rolph,* 140 Minn. 190; *Bailey* v. *Niebrugge,* 211 Ill. App. 82; *People* v. *Jordan,* 172 Cal. 391; *Kuechler* v. *Volgmann,* 192 N. W. Rep. 1015; *People* v. *Curtis,* 152 App. Div. 372; 206 N. Y. 747; *People* v. *Moore,* 142 App. Div. 402; 201 N. Y. 570.) Defendant offered or undertook to treat a patient. (*People* v. *Devinny,* 227 N. Y. 397; *People* v. *Cole,* 219 N. Y. 98; *People* v. *Mulford,* 140 App. Div. 716; 202 N. Y. 624; *People* v. *Ellis,* 162 App. Div. 288; *Brown* v. *Shyne,* 242 N. Y. 176; *People* v. *Scholz,* 28 N. Y. Cr. Rep. 357; *People* v. *Eifertsen,* 239 N. Y. Supp. 111; *People* v. *Bockman,* 255 N. Y. Supp. 691; *Collins* v. *Texas,* 223 U. S. 288; *State* v. *Smith,* 238 Mo. 242; *Bragg* v. *State,* 134 Ala. 165; *Eastman* v. *People,* 71 Ill. 236; *Underwood* v. *Scott,* 23 Pac. Rep. 942; *Benham* v. *State,* 116 Ind. 112; *People* v. *Phippin,* 70 Mich. 6; *State* v. *Wilhite,* 132 Iowa, 226; *Territory* v. *Newman,* 13 N. M. 98; *People* v. *Gordon,* 194 Ill. 560; *Kansas* v. *Johnson,* 84 Kan. 411; *Jones* v. *People,* 82 Ill. 453; *State* v. *Greiner,* 63 Wash. 46; *State* v. *Corwin,* 151 Iowa, 420.)

POUND, Ch. J. Defendant is charged with illegally practicing medicine. (Education Law [Cons. Laws, ch. 16], §§ 1250, 1251.) He is a licensed physiotherapist. Physiotherapy is, generally speaking, the treatment of disease by physical remedies rather than drugs. A license to practice physiotherapy must be obtained from the Department of Education and duly registered. The practice of physiotherapy is strictly defined and narrowly limited by law.

For the purpose of medical treatment it is defined in section 1262 of the Education Law as follows: " Physiotherapy * * * is the use of actinotherapy, hydrotherapy, mechanotherapy, theremotherapy, and electro-

therapy, exclusive of the X-ray." A duly licensed physician may use such modalities but the licensed physiotherapist may not engage in the independent use thereof.

The statute further provides: " A license to practice physiotherapy shall *not* permit the holder thereof to administer drugs or to practice medicine as defined in section twelve hundred and fifty of this article, *except to treat diseases under the supervision of a duly licensed physician.*"

A rule of the Regents also provides: " Registered physiotherapist shall keep a written prescription signed by a licensed physician for each patient given physiotherapeutic treatment. The prescription shall state the diagnosis and the type of treatment ordered. Such records shall be open to the inspection of the Department of Education at all times."

Thus it would seem that a patient, having consulted a licensed physician of his own choice might after examination and diagnosis be found in need of physiotherapeutic treatment. His physician then writes for him a prescription stating the diagnosis and type of treatment ordered by him and he takes it to a licensed physiotherapist in the same manner as he might take a prescription for drugs to a pharmacist to be filled. The theory that the physiotherapist acts under his own supervising physician does not comport with the practice that the physician examines and prescribes before the physiotherapist sees him.

In this case the defendant contends that he made a mere examination of the patient and reported the results to a licensed physician of his own choosing, unknown to the patient, over the telephone; that he was told by him to apply a light kind of heat and that the physician would come over in a few minutes; that the physician, after treatment of the patient by the defendant, came to defendant's office and undertook to examine the patient,

against her protest, and without any additional diagnosis, wrote out a prescription for her and a direction card to appellant for physiotherapeutic treatment, which she never took and that, therefore, defendant did not treat disease except " under the supervision of a duly licensed physician."

Adopting for the purpose of the decision so much of defendant's contention as is consistent with the evidence of the People's witness who was a police woman attached to the crime prevention bureau and temporarily assigned to the Attorney-General's office to get evidence against illegal practitioners of medicine, we think that a case of practice of medicine by defendant was made out; that defendant treated the witness for rheumatism, or at least for her complaint, on his own diagnosis and not under the supervision of a duly licensed physician and on his written prescription. (*Brown* v. *Shyne*, 242 N. Y. 176.)

Defendant's office and office equipment and his conduct had all the indicia of a doctor's office and a doctor's treatment. When the People's witness called at defendant's office she met the defendant. To her question if he was Dr. Mari he replied that he was; he asked her what was the trouble and she told him she had been suffering with great pains in her hands; he took her family history and made an intimate personal examination of her; he tested her reflexes and looked into her throat, palpated her abdomen, took a specimen of her urine for examination and examined it and told her he found a trace of albumin; took her blood pressure and was about to take a blood test but under her objection he desisted. He then had her place her hands under an electric lamp known as a thermolite.

After about half an hour of this treatment in came Dr. Andrei, who was a licensed physician. He wanted and tried unsuccessfully to examine the patient and he wrote a prescription. She refused his services. She said, " Who are you? I didn't send for you." She then

paid defendant five dollars and got out of his office. Asked by defendant's counsel if she was not sore because Dr. Andrei had " spoiled her game," she said that her game was completed before he came. To account for the presence of Dr. Andrei we must take as true the evidence that he was summoned to defendant's office by or for the defendant. It might be assumed also that he instructed the defendant over the telephone what to do until he arrived, and it is not contended that such practice is unusual. The trouble is, however, that such practice has no sanction whatever in the law, which defines what a licensed physiotherapist may do. To say that the statute contemplated that such a one may make a complete examination of a patient, take his history, report the results to a licensed physician of his own selection over the telephone, act on his verbal instructions until the physician arrives, then have him go through the motions of handing the patient, who repels him, a prescription without any independent examination on his part, is to open the door so wide to evasion as to leave the statute a mere futility. All this procedure may be quite harmless but it is not the procedure permitted by the law.

If on the People's evidence in this case the triers of fact could not find that defendant held himself out as being able to diagnose and treat diseases, it is difficult to see wherein the statute affords any protection to those who may be attracted to the office of a physiotherapist by his advertisements in connection with rheumatism and like diseases, and into the hands of one who, without adequate medical training, essays to examine them for human ills, say what treatment they need and administer it to them, without any prior supervision of a duly licensed physician and without a written prescription stating the type of treatment ordered. When such conduct is a fraud or a pretense, as it appears to have been in this case, the courts are not so blind and dumb as to be taken

in by it.  It is no defense that defendant acted in good faith or did what was customary.  (*People* v. *Cole*, 219 N. Y. 98.)  The only question is whether he violated the statute.  Of this there seems to be no doubt.

The judgment should be affirmed.

CRANE, LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment affirmed.