In the Matter of the Application of ANNA SWIFT, Petitioner, for an Order Pursuant to Article 78 of the Civil Practice Act against FRANK P. GRAVES, as Commissioner of Education of the State of New York, and Others, Respondents, to Review a Determination of the Respondents Revoking Petitioner's License to Practice Physiotherapy in the State of New York.

Supreme Court, Special Term, Ulster County, April 27, 1940.

*Rand, French & Carpenter*, for the petitioner.

*John J. Bennett, Jr., Attorney-General*, for the respondents.

MURRAY, J. This is an application by the petitioner, Anna Swift, for an order reviewing the determination of the respondents in revoking, annulling and canceling the license of Anna Swift to practice physiotherapy, and in annulling and canceling of record her registration as a physiotherapist, or, in the alternative, that the proceedings herein be transferred to the Appellate Division of the Supreme Court for the Third Judicial Department for disposition, for a final order rescinding and annulling the determination of the respondents, and directing that the name of Anna Swift be reinstated on the records of the State Board of Education as a duly

licensed registered licensee to practice physiotherapy and for such other and further relief as, to the court, may seem just and proper. Despite the prayer for transfer to the Appellate Division, the brief in behalf of the petitioner states that there is only a single clean-cut question of law presented to the court for determination.

The petitioner lives in New York city, and on or about the 16th day of October, 1930, the Regents of the University of the State of New York, pursuant to section 51 of the Education Law, granted to her a license to practice physiotherapy in the State of New York. She had offices and a place for the practice of her profession at 8 West Seventieth street, New York city, for many years. She was convicted December 1, 1936, of (1) keeping and maintaining a house of ill fame; (2) keeping a disorderly house; (3) maintaining a public nuisance; (4) unlawfully as lessor knowingly and with good reason to know permitting a room to be used as a place for the practice of prostitution and lewdness and other misbehavior, in the Court of Special Sessions of the City of New York, and sentenced to imprisonment for three months in the workhouse.

She appealed from the judgment of conviction to the Appellate Division of the Supreme Court, First Department, which court duly affirmed the conviction (*People* v. *Swift*, 251 App. Div. 808). Thereafter, she appealed to the Court of Appeals, on leave granted by the Appellate Division, and the Court of Appeals affirmed the conviction (277 N. Y. 618). Thereafter, petitioner was formally notified by the secretary of the committee on grievances of the Department of Education that charges had been preferred against her to revoke her license to practice physiotherapy and cancel her registration. A copy of the charges was served upon her. The basis of the charges against petitioner to revoke her license and to cancel her registration was that she had been convicted of crime and of the crime enumerated above.

On the 26th of June, 1939, a formal hearing on the charges was had before a subcommittee of the Medical Grievance Committee in New York city. Petitioner appeared by counsel. Before this hearing was held, petitioner applied to the Supreme Court of the State of New York for an order to prohibit and restrain the Attorney-General, the Board of Regents and the Medical Grievance Committee from hearing the alleged charges, on the grounds that petitioner was a physiotherapist, and that the disciplinary proceedings set forth in the Education Law did not include her; that it was limited to physicians and practitioners of medicine. The motion was denied. Petitioner appealed to the Appellate Division, which court affirmed the Special Term without opinion (*Matter of Swift* v. *Upham*, 256 App. Div. 1066). Petitioner asked leave of the Court of Appeals to appeal from the judgment of affirmance by the

Appellate Division, and this motion was also denied without opinion (281 N. Y. 887).

Whatever the character of the petitioner is, she is entitled to be judged as to the revocation of her license to practice physiotherapy and the cancellation of her registration in accordance with the law. She may be the lowest and foulest of creatures, but none the less it is repugnant to due administration of justice and abhorrent that property be taken from her without due process of law. Her lawyers assert, as she does also, and it is not disputed, that she does not practice medicine. Subdivision 7 of section 1250 of the Education Law provides: " The practice of medicine is defined as follows: A person practices medicine within the meaning of this article, except as hereinafter stated, who holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity, or physical condition."

Subdivision 2 of section 1264 of the Education Law provides:

" The license or registration of a practitioner of medicine may be revoked, suspended or annulled or such practitioner reprimanded or disciplined in accordance with the provisions and procedure of this article upon decision, after due hearing in any of the following cases. * * *

" (b) That a physician has been convicted in a court of competent jurisdiction, either within or without this State, of a crime."

The practice of physiotherapy, as used in this article (Art. 48, § 1262) of the Education Law, is hereby defined as the use of actinotherapy, hydrotherapy, mechanotherapy, thermotherapy and electrotherapy, exclusive of the X-ray.

A license to practice physiotherapy shall not permit the holder thereof to administer drugs or to practice medicine as defined in section 1250 of this article.

Section 1265 of the Education Law provides in part for " a committee which shall be known as the committee on grievances which shall consist of ten members who shall be appointed by the Regents."

Subdivision 4 of section 1265 provides: " The members of said committee shall have jurisdiction to hear all charges against duly licensed physicians of this State."

The mode of procedure is in detail prescribed and provided as to charges and hearings thereon, and further that the committee shall determine the charges upon the merits. Upon the records, findings and determination of the Medical Committee on Grievances, pursuant to a vote of the Board of Regents of the State of New York,

on the 23d day of February, 1940, an order was made that license No. 396 issued under date of October 16, 1930, to petitioner, permitting her to practice physiotherapy in the State of New York, be revoked, annulled and canceled, and her registration or registrations as a physiotherapist, wherever they appear, be annulled and canceled of record.

The respondents claim that the determination is justified by the law, because the title of article 48 of the Education Law is " Practice of Medicine " and the practice of physiotherapy is embraced within the article; that petitioner's license] could be properly and legally revoked by the same identical procedure as provided by the article to revoke the license of a physician. There is a marked difference and distinction between a physician and a physiotherapist, and it has been so held as law. (*People* v. *Mari*, 260 N. Y. 383.) It is plain from the statutes and laws prescribing the requisite education and other numerous qualifications, and also from common sense, that the public has a right to demand more knowledge and a higher standard of conduct from physicians than physiotherapists.

There is no contention upon the part of the petitioner that the hearing conducted by the Regents was unfair in any particular. There is no claim by petitioner that the judgment or order of revocation and cancellation of petitioner's license is against the weight of evidence. It is admitted she has been convicted of crime. It is undisputed that for a conviction of crime the Regents has the power to revoke the license of a physician and cancel his registration. The sole objection of petitioner is that the Regents were without authority or jurisdiction in the premises. It is the novel and unique plea of the petitioner that because the Regents applied the same formal procedure required to hear and determine charges of unfitness against a physician, in proceeding in such a manner against a physiotherapist its action is a nullity as a matter of law.

With this contention I cannot agree. The Regents issued the license to petitioner, and I hold that in its supervisory capacity, the Regents, for proper and sufficient cause, had the identical same right to revoke it. It would be absurd to reason that, because petitioner was granted the same protection and safeguards granted to a physician as to removal on charges, she has been injured and damaged. .It seems to this court that petitioner was given more protection by the Regents than required; hence, the determination of the respondents revoking, annulling and canceling the license of Anna Swift to practice physiotherapy, and in annulling and canceling of record her registration as a physiotherapist, is, in all respects, confirmed, with costs.

Submit order.