AITCHISON *v.* STATE

[No. 137, October Term, 1953.]

*Decided May 25, 1954*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*David Aitchison, pro se,* as appellant.

*W. Giles Parker,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, and *Walter W. Dawson,* States' Attorney for Montgomery County, on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

David Aitchison, a resident of Takoma Park, has appealed here from his conviction by the Circuit Court for Montgomery County for unlawfully practicing medicine in violation of the State Medical Practice Act. Code 1951, art. 43, secs. 117-147.

By direction of that Act, there are now in Maryland two Boards of Medical Examiners authorized to issue licenses for the practice of medicine and surgery. The members of one Board are appointed by the Medical and Chirurgical Faculty of Maryland, the members of the other by the Maryland State Homeopathic Medical Society. Sec. 118; *Board of Medical Examiners v. Steward,* 203 Md. 574, 102 A. 2d 248.

The Act provides that every license to practice medicine and surgery shall be subscribed by the president and the secretary of the Board of Medical Examiners before whom the applicant has passed, and shall have

affixed to it the seal of the Medical and Chirurgical Faculty or the Hoemopathic Medical Society. Any person receiving a license from either Board shall file it with the Clerk of the Circuit Court, and it shall be the duty of the Clerk to register his name and the name of the president of the Board signing the license. Any person practicing medicine or surgery in this State without having obtained a license from one of these Boards shall be guilty of a misdemeanor, and shall be fined not less than $50 nor more than $200 for each offense. No person shall practice medicine or surgery unless he shall be registered as a physician or surgeon, and any person who shall practice without being registered shall be guilty of a misdemeanor, and shall be fined not less than $10 nor more than $200 for each offense. Secs. 126, 127, 128, 131, 136.

The first count of the indictment charged that appellant had practiced medicine without having registered his authority with the Clerk of the Circuit Court for Montgtomery County.

The second count charged that he practiced medicine by treating the physical ailment of a person whose name was unknown to the grand jury.

The third count charged that, without having registered with the Clerk, he practiced medicine by treating a physical ailment of Nathan Booth.

The fourth count charged that, without having obtained a license, he practiced medicine by appending the words "Dr.," "Doctor," and "M. D.," with intent to imply that he was engaged in the practice of medicine.

The fifth count charged that, without having obtained a license from one of the Boards of Medical Examiners, he practiced medicine by treating a physical ailment of one whose name was unknown to the grand jury.

The State abandoned the third count, and the case was then tried before a jury. Dr. Lewis P. Gundry, president of the State Board of Medical Examiners, testified that appellant was not licensed to practice medicine and surgery in the State of Maryland.

Clayton K. Watkins, Clerk of the Circuit Court, testified that defendant's name had not been registered in the Clerk's office from certification by either Board of Medical Examiners, but there was recorded in his office a certificate from the Board of Naturopathic Examiners that he was qualified to practice as a naturopathic physician. That certificate, dated February 1, 1940, reads as follows:

"This is to certify that Dr. David Aitchison has shown this Board a diploma granted by a legally chartered school of Naturopathy approved by this Board and has passed the examination required by this Board and is hereby declared to be fully competent and qualified to practice the Healing Art as a Naturopathic Physician, and in recognition of these attainments and qualifications is recommended for registration to practice Naturopathy in any jurisdiction recognizing the authority of this Board by law, ordinance or otherwise."

The State then produced a witness who testified that appellant had treated him for a blood clot at the base of his brain, and had given him some medicine, and that he had paid appellant for his services.

The jury found appellant guilty on the four counts of the indictment. The Court thereupon fined him $200 on the second count and $200 on the fifth count, and suspended sentence on the first and fourth counts.

Appellant made no denial of the charge that he had been practicing medicine in Montgomery County since August 7, 1949. But he strenuously contended that the law of Maryland does not require him to have a license from either of the Boards of Medical Examiners. He claimed that he is not an allopathic physician, but a naturopathic physician; that allopathic medicine and naturopathic medicine are separate and distinct schools; and that the Legislature never intended to include the practice of naturopathic medicine within the scope of the Medical Practice Act. He asserted that, while there

were no naturopathic physicians in Maryland at the time of the enactment of the original Act, naturopathic physicians have been practicing in this State for about thirty years. He argued that under the common law naturopaths have the right to practice their profession, and their practice is regulated by the Board of Naturopathic Examiners, which has been empowered to issue certificates to those who were qualified to practice.

The State filed a motion to dismiss the appeal on the ground that appellant did not print the testimony in the appendix to his brief, as required by Rule 39 of the Rules of the Court of Appeals, which directs that the appendix to the appellant's brief shall contain "such parts of the record as he desires the Court to read." However, the Attorney General did not press the motion, but supplied the testimony in the appendix to the State's brief. Since the question raised by the appeal is one of law, rather than of fact, and is one of great public importance, we will not dismiss the appeal.

The question has been seriously debated for some years. It was presented to this Court by the Maryland Naturopathic Association more than five years ago. That Association had brought a suit against the members of the State Board of Medical Examiners to obtain a judicial decree declaring that naturopathy is not included within the provisions of the Medical Practice Act regulating the practice of medicine. The Association alleged that naturopathy is a system of healing which does not use drugs or surgery to cure disease, but instead makes use of the healing properties of such natural agencies as air, sunshine, water, light, heat, electricity, exercise, rest, massage, health foods, vitamins, minerals, special food preparations, herbs, external applications, baths, sweats, and irrigations, in conjunction with the application of the scientific principles of mental hygiene, health education, physical culture, manipulation, corrective gymnastics, dietetics, hygiene and sanitation. This Court declined to render an opinion on the question because the Association itself could not practice

naturopathy, and it had no property rights which could be affected by the acts alleged to have been committed by the defendants, and therefore it had no right to maintain the suit for the declaratory decree. *Maryland Naturopathic Ass'n v. Kloman,* 191 Md. 626, 62 A. 2d 538.

At common law the practice of medicine was open to all persons who desired to follow it in any of its branches, subject only to liability for damages in case of lack of skill on the part of the practitioner, and to the right of the government to proceed by *quo warranto* to prevent incompetents from following the profession. It is also an accepted doctrine that the right to practice medicine is a valuable right of property within the meaning of the Fourteenth Amendment of the Federal Constitution guaranteeing due process of law. *People v. Love,* 298 Ill. 304, 131 N. E. 809, 16 A. L. R. 703.

However, no person has an absolute vested right to practice medicine, but only a conditional right which is subordinate to the police power of the State to protect and preserve the public health. *Reetz v. People of State of Michigan,* 188 U. S. 505, 23 S. Ct. 390, 47 L. Ed. 563. The State, in the performance of its duty to protect and preserve the public health, has the power, within constitutional limitations, to regulate the practice of medicine by those engaged therein. This regulatory power is justified by the fact that the practice of medicine requires special knowledge, training, skill and care, that health and life are committed to the physician's care, and that patients ordinarily lack the knowledge and ability to judge his qualifications.

The original Act creating a system for the regulation of the practice of medicine and surgery in Maryland was adopted by the Legislature in 1888. That Act permitted three classes of persons to practice medicine: (1) those who were graduates of a medical college, (2) those who passed an examination given by the State Board of Health, and (3) those who had been practicing medicine in Maryland for ten years. Laws 1888, ch. 429.

The Act of 1888 defined a practitioner of medicine as follows: "That any person shall be regarded as practicing medicine within the meaning of this act who shall profess publicly to be a physician and prescribe for the sick, or who shall append to his name the letters M. D.; but nothing in this act shall be construed to prohibit students from prescribing under the supervision of preceptors, or to prohibit gratuitous services in cases of emergency; and this act shall not apply to commissioned surgeons in the United States army, navy or marine hospital service, nor shall it apply to physicians or surgeons not resident in this state, who may be called in consultation within this state."

In *Scholle v. State,* 90 Md. 729, 46 A. 326, 50 L. R. A. 411, decided in 1900, the defendant, who had been prosecuted for unlawfully practicing medicine in Maryland without being registered in the registry of physicians, challenged the constitutionality of the statute regulating the practice of medicine and surgery, because surgeons in the Army, Navy, and Marine Hospital Service, and other classes of physicians and surgeons were exempted from the provisions of the statute. Laws 1892, ch. 296, Laws 1894, ch. 217, Laws 1896, ch. 194. The Court of Appeals decided that the classification of persons required to obtain licenses was reasonable and did not infringe the Equal Protection Clause of the Fourteenth Amendment.

The constitutionality of the statute was again attacked in 1907 on the ground that it did not require licenses for chiropodists, midwives, and masseurs or other manual manipulators. Here again the Court held the statute valid. *Watson v. State,* 105 Md. 650, 658, 66 A. 635, affirmed 218 U. S. 173, 30 S. Ct. 644, 54 L. Ed. 987.

Section 138 of the Medical Practice Act now defines a practitioner of medicine as follows:

> "Any person shall be regarded as practicing medicine within the meaning of this sub-title who shall append to his or her name the words or letters 'Dr.,' 'Doctor,' 'M. D.,' or any other

title in connection with his name, with the intent thereby to imply that he or she is engaged in the art or science of healing, or in the practice of medicine in any of its branches, or who shall operate on, profess to heal, prescribe for, or otherwise treat any physical or mental ailment or supposed mental ailment of another, or who shall for hire or for any gratuity or compensation, either directly or indirectly to him or her paid, undertake by any appliance, operation or treatment of whatever nature, to cure, heal or treat any bodily or mental ailment or supposed ailment of another; or who for any hire, gratuity or compensation, either directly or indirectly to him or her paid, by or for any patient, shall undertake to treat, heal, cure, drive away or remove any physical or mental ailment, or supposed ailment of another, by mental or other process, exercised or invoked on the part of either the healer or the patient or both; * * *."

It is absolutely clear from the definite language of the statute that the Legislature intended "practice of medicine" to include not only the application of medicine to patients, but any practice of the art of healing disease and preserving the health other than those special branches of the art that were expressly excepted.

Most of the courts have given broad constructions to similar statutes. An example is *Commonwealth v. Zimmerman*, 221 Mass. 184, 108 N. E. 893, 894. There a chiropractor was prosecuted on the charge of practicing medicine without being lawfully authorized. He defended on the ground that his acts did not constitute a violation of the statute. Although he did not prescribe medicine and he testified that he did not pay any attention to the patient's description of his symptoms and disease, the Court declared that it was obvious that his purpose was to treat the human body in order to make natural that which he found abnormal in the field

of his examination. In speaking of the manipulation of the spinal column to remove pressure upon the nerves as a means of relieving ills flowing from that source, Chief Justice Rugg said:

"It might have been found that it could have no other aim than a prevention of disease or relief from existing disarrangement of body functions. That which the defendant did and its manifest purpose might have been found to be practicing medicine within the meaning of the statute. Medicine relates to the prevention, cure and alleviation of disease, the repair of injury, or treatment of abnormal or unusual states of the body and their restoration to a healthful condition. It includes a broad field. It is not confined to the administering of medicinal substances or the use of surgical or other instruments. * * * In order to practice medicine one need not cover the entire field of the science. If he devotes himself to a very restricted part of it, he still may be found to practice medicine."

A broad construction was also given by the United States Supreme Court to the Texas statute in *Collins v. State of Texas*, 223 U. S. 288, 32 S. Ct. 286, 288, 289, 56 L. Ed. 439. In that case an osteopath was accused of practicing medicine by treating a patient for hay fever without having registered his authority. Justice Holmes, delivering the opinion of the Court, said: "An osteopath professes * * * to help certain ailments by scientific manipulation affecting the nerve centers. It is intelligible, therefore, that the state should require of him a scientific training. * * * He, like others, must begin by a diagnosis. It is no answer to say that in many instances the diagnosis is easy,—that a man knows it when he has a cold or a toothache. For a general practice science is needed. An osteopath undertakes to be something more than a nurse or a masseur, and the difference rests precisely in a claim to greater science, which the state requires him to prove. The same con-

548

siderations that justify including him justify excluding the lower grades from the law."

By the proviso in Section 138 of the Maryland Act, the following exceptions are made to the broad definition of practitioner of medicine: (1) gratuitous services; (2) resident and assistant resident physicians and students at hospitals, in the discharge of their hospital or dispensary duties and in the offices of physicians; (3) any physician or surgeon from another State when in actual consultation with a practitioner of this State; (4) commissioned surgeons in the United States Army, Navy, and insane hospital service; (5) opticians, (6) chiropodists, (7) midwives, (8) masseurs or other manual manipulators, who use no other means; (9) any physician or surgeon residing on the border of a neighboring State and authorized to practice medicine and surgery therein, whose practice extends into this State; (10) graduates in dental surgery; and (11) the sale by druggists and other dealers in drugs or medicines of any proprietary or patent medicine or any official or standard drug or medicine.

The Legislature has prescribed special regulations for the practice of osteopathy, chiropody and chiropractic. The osteopath obtains his license from the Board of Osteopathic Examiners. Secs. 428-441. The chiropodist obtains his license from the Board of Chiropody Examiners. Secs. 442-455. The chiropractor obtains his license from the State Board of Chiropractic Examiners. Secs. 460-475.

Appellant relied on a certificate of the Board of Naturopathic Examiners, but that Board was set up by the Maryland Naturopathic Association, and has not been officially recognized by the Legislature.

It is beyond question that the State has the power to regulate any of the special systems or branches of the medical art independent of the general practice of medicine. The regulations adopted by the State, in the exercise of the power to regulate the treatment of disease, need not be uniform with respect to all methods and

systems of practice, but distinctions may be made and schools or methods of practice may be exempted from the regulations or subjected to peculiar regulations as long as the discrimination is not arbitrary or unreasonable. *Crane v. Johnson*, 242 U. S. 339, 37 S. Ct. 176, 61 L. Ed. 348; *Keiningham v. Blake*, 135 Md. 320, 109 A. 65, 8 A. L. R. 1066.

In *People v Mari*, 260 N. Y. 383, 183 N. E. 858, the Court of Appeals of New York held that a licensed physiotherapist, whose practice was limited to the treatment of patients in the manner prescribed by written prescription of a licensed physician, was properly convicted of the illegal practice of medicine, upon evidence that he treated a patient for rheumatism, or at least for her complaint on his own diagnosis and not under the supervision of a duly licensed physician and on a physician's written prescription.

In *Commonwealth v. Allison*, 103 Pa. Super. 140, 156 A. 812, the Court held that a person licensed "to treat the sick by herbs and massage" had unlawfully engaged in the practice of medicine when he gave a patient medicine for an ailment which he diagnosed as grippe.

In *State v. Lydon*, 170 Wash. 354, 16 P. 2d 848, the Supreme Court of Washington held that the lancing of a cancer by a sanipractor, who was licensed as a drugless healer, constituted illegal practice of medicine.

In *Ex Parte Gerber*, 57 Cal. App. 141, 206 P. 1004, the petitioner was a graduate of a school of naturopathy, the destinies of whose students were under the control of the State Board of Examiners of the Naturopathic Physicians of California. Upon his graduation that Board certified that he had passed the examination in all branches of naturopathic therapeutics, and that they conferred upon him the degree of Doctor of Naturopathy. Since that time he had been engaged in the practice of naturopathy, making a specialty of treatment of the eyes. The Court ordered the petitioner to be discharged from custody, but made it plain (1) that the Court accepted the ruling of the State Board of Medical Examiners that

the petitioner was a physician and surgeon under the laws of California, and (2) that he was entitled to practice optometry under the provisions of the Optometry Law.

It was argued by appellant in the instant case that, since the Legislature had expressly provided for special licensing of osteopathy, chiropody, and chiropractic, and had made no provision for the licensing of naturopaths, it should be inferred that naturopaths may practice without a license. We cannot accept that contention. As appellant stated, bills have been introduced in the Legislature to permit and regulate the practice of naturopathy. The very fact that no such legislation has been passed indicates that the Legislature has not intended thus far to permit naturopaths to practice without a license. The Legislature has been careful to prevent medical treatments without the protection afforded by some official regulatory board. The law now demands a license for hair dressers and beauty culturists. Secs. 490-516. A certificate of registration may be obtained for the practice of trichology, which is defined as "the massaging, cleansing, stimulating, exercising or similar work upon the scalp, by the use of mechanical or electrical apparatus or appliances, or cosmetics, preparations, tonics, antiseptics, creams or lotions, or by other means." Sec. 495.

In view of the solicitude which the Legislature has displayed for the protection of the health of the people, the breadth of the language it has employed to define the practice of medicine, and its failure to exempt naturopaths from the definition, we are compelled to hold that the Medical Practice Act prohibits a person desiring to engage in the healing art by the practice of naturopathy from doing so without a license from the State Board of Medical Examiners. The judgment of conviction must therefore be affirmed.

*Judgment affirmed, with costs.*